IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP, | ) ) ) | 5:18-cv-2124 |
| Plaintiff | ) ) | |
| v. | ) ) | |
| LOWER MACUNGIE TOWNSHIP, RONALD W. BEITLER, RONALD R. BEITLER, RICHARD V. WARD, DOUGLAS H. BROWN, BRIAN P. HIGGINS and BENJAMIN A. GALIARDO, in their individual capacities | ) ) ) ) ) ) | |
| Defendants | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants, Lower Macungie Township ("Defendant Township"), and Ronald

W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, Brian P. Higgins

and Benjamin A. Galiardo ("the Individual Defendants"), through their attorneys,

Norris, McLaughlin & Marcus, P.A., submit this brief in support of their Motion to

Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).

## I.   **Statement of Facts**

On May 21, 2018, Plaintiff, Adams Outdoor Advertising Limited Partnership ("Plaintiff") filed a Complaint solely against Defendant Township asserting various claims arising out of a lease relating to a billboard structure located in Lower Macungie Township, Pennsylvania.  The original Complaint included three counts: (1) anticipatory breach of contract; (2) §1983 unconstitutional taking of property rights without just compensation; and (3) declaratory judgment.  Defendant Township filed a 12(b)(6) Motion to Dismiss all counts of the Complaint.  In response, Plaintiff filed an Amended Complaint, adding the Individual Defendants and asserting additional facts.

The Amended Complaint includes some, but not all, of the previous claims, and adds new claims.  The claims asserted in the Amended Complaint are as follows: Count I – Anticipatory Breach of Contract (against Defendant Township); Count II – 42 U.S.C. §1983 Denial of Substantive Due Process (against Defendant Township and all Individual Defendants, other than Individual Defendant Galiardo); Count III – Conspiracy (against all Individual Defendants); and Count IV – Declaratory Judgment (against all Defendants).  The facts as alleged in the Amended Complaint can be summarized as follows:

In 2003, Plaintiff and Kay Builders, the then-owner of the land on which the billboard is located, entered into a Lease Agreement ("the Lease Agreement") for an existing billboard structure located in Lower Macungie Township.  The Lease

Agreement was for an initial five (5) year term with automatic extensions of like

terms.  Pertinent to this dispute, Paragraph 9 of the Lease Agreement provides as

follows:

> This Lease is binding upon the heirs, successors and assigns of both Lessor and
> Lessee, with the exception of any termination rights of Lessor set forth in this
> Lease Agreement or any addendum or subsequent amendment, which rights
> may only be exercised by the original Lessor (whose name is set forth at the top
> of this lease) and not by or for the benefit of any entity with the power of
> eminent domain.

The "original Lessor" identified in the Lease Agreement is Kay Builders.  (Amended

Complaint ¶¶ 13, 15 and 16 and Exhibit A to the Amended Complaint).

In 2011, Kay Builders conveyed the land on which the billboard is located to

Defendant Township.  Thereafter, in 2013, Plaintiff and Defendant Township

entered into an Addendum to the Lease ("the Addendum"), which, *inter alia,*

converted the term of the Lease Agreement to a month-to-month term.  (Complaint,

¶¶ 17, 18 and 20).  Pertinent to this dispute, the Addendum states as follows:

> This Addendum is made part of a Lease Agreement dated <u>January 10,
> 2003</u>…between Adams Outdoor Advertising Limited Partnership ("Lessee") and
> Kay Builders ("Lessor").

> Whereas, Lower Macungie Township is now the Lessor.  Lessee and Lessor also
> agree to the following:

> 1.   Effective June 1, 2013, Lease Agreement shall continue on a month-to-month
>      basis.

> IN THE EVENT OF A CONFLICT between the Lease and this Addendum, the
> provisions of this Addendum shall take priority; in all other respects, the Lease
> remains unchanged.

(Complaint ¶¶ 20 and 21 and Exhibit B to Amended Complaint).

3

In the Amended Complaint, Plaintiff argues at length regarding the meaning and effect of the language in the Lease and Addendum (sometimes collectively referred to herein as "the Lease") with regard to termination rights. More specifically, Plaintiff argues that, pursuant to the terms of the Lease and the Addendum, Defendant Township has no right to terminate the Lease. Instead, according to Plaintiff, only Kay Builders, *i.e.*, the original Lessor who no longer owns the property, has the right to terminate the Lease.

Plaintiff alleges that all of the Individual Defendants were, at various times, members of the Board of Commissioners of Defendant Township and that, at various times in 2017 and 2018, each Individual Defendant voted to terminate the Lease with Plaintiff. (Amended Complaint ¶¶ 31-34, 42 & 47). More specifically, Plaintiff alleges that on May 18, 2017, Defendant Township, by vote of its Board of Commissioners, passed a motion to eliminate the billboard. Shortly following this vote, Defendant Township's Solicitor sent a letter of termination to Plaintiff requesting removal of the billboard by December 31, 2017. (Amended Complaint ¶¶ 33 & 35). Thereafter, Plaintiff requested to be placed on the agenda to discuss termination of the Lease, and Plaintiff appeared at the September 21, 2017 public meeting of Defendant Township requesting that the Board reconsider and rescind its termination of the Lease. (Amended Complaint ¶ 36 & 37).

Plaintiff next alleges that, during the September 21, 2017 public meeting, two of the Individual Defendants – Defendant Ronald W. Beitler and his father,

Defendant Ronald R. Beitler – were privately texting each other concerning the issue of whether to reconsider and rescind the termination of the Lease, with the junior Defendant Beitler purportedly attempting to sway his father's vote.  Plaintiff also alleges that "upon information and belief", all of the Defendants "individually or collectively as a quorum, communicated in secret on additional occasions for purposes of deliberating and influencing each other's votes concerning the official action of terminating the Lease Agreement and removing [Plaintiff's] billboard…" (Amended Complaint ¶¶ 38-41).  At the September 21, 2017, a motion to authorize negotiations with Plaintiff about the possibility of amending the Lease failed, purportedly as a result of Defendants' private communications and attempts to secretly "whip" votes in the middle of a public meeting.  (Amended Complaint ¶ 42).

Thereafter, Plaintiff alleges that Defendants passed a motion on January 18, 2018 to clarify the termination of the Lease with Plaintiff and that, by letter dated January 25, 2018, Defendant Township advised that it was terminating the Lease, demanded removal of the billboard, threatened legal action to accomplish removal of the billboard and indicated that Defendant intended to remove and dispose of the billboard itself if Plaintiff did not do so by June 1, 2018.  (Amended Complaint ¶¶ 47 & 48).[1]  The January 25, 2018 letter in its entirety reads as follows:

---

[1] As with its original Complaint, Plaintiff failed to attach a copy of the January 25, 2018 letter – or the later-referenced April 6, 2018 letter from Defendant Township – to its Amended Complaint. Therefore, Defendants have attached copies of these documents as Exhibits A & B to this Brief.  In considering a motion to dismiss, a district court is generally limited to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  Pension Benefit

On May 22, 2017, I provided written notice to Adams Outdoor Advertising that the abovementioned Lease shall terminate on December 31, 2017 and requested Adams to remove its Board/Structure after the Lease expiration date.  At a public meeting on January 18, 2018, the Board of Commissioners reaffirmed their decision not to negotiate a new lease at this location.

Therefore, please immediately remove the above referenced Board/Structure to avoid legal action to compel same.

(See Exhibit A attached hereto).

In response, Plaintiff sent a letter dated April 2, 2018 to Defendant Township rejecting Defendant Township's demand for removal of the billboard, and asserting its position that only Kay Builders, *i.e.*, the purported "original Lessor", had the right to terminate the Lease.  (Amended Complaint, ¶ 50).  Plaintiff alleges that, by letter dated April 6, 2018, Defendant Township renewed its demand for removal of the billboard and "indicated that it intends to remove and dispose of the billboard itself if [Plaintiff] does not do so by Friday, June 1, 2018."  (Amended Complaint ¶ 51).  The actual language of the April 6, 2018 letter reads in pertinent part as follows:

The Township renews its demand that Adams remove the billboard immediately.  Please direct your client to notify the Township Manager of its intentions in this regard.  Without waiving any right or remedy that it has, or may have, the Township will permit Adams and its employees and agents to enter upon the property to effectuate the removal of the billboard until Friday, June 1, 2018 at 5:00 p.m.  The Township is under no obligation to do so, having already afforded Adams, as the Lessee, a reasonable period of time post-termination to remove the structure.  If Adams does not remove the

Guar. Bd. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  However, a court may also consider "an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Gordon v. Kohl's Dept. Store, 172 F.Supp.3d 840, 850 (E.D. Pa. 2016).

billboard from the property by that time, the Township shall pursue any and all rights and remedies available to it, including, but not limited to, removal and disposal of the structure.

(See Exhibit B attached hereto, final Paragraph on p. 2)

On May 7, 2018, *i.e.,* subsequent to the exchange of correspondence between Plaintiff and Defendant Township, Plaintiff entered into a separate agreement with Kay Builders wherein, in exchange for a payment of $2,500.00 by Plaintiff, Kay Builders agreed not to exercise its termination rights under the Lease and Addendum for a period of five years (*i.e.,* until May of 2023).  (Amended Complaint ¶ 30 and Exhibit C to Amended Complaint).

Thereafter, on May 17, 2018, Defendant Township, by vote of its Board of Commissioners, approved a motion to authorize its counsel to file legal action to remove the billboard if Plaintiff did not do so by June 1, 2018.  (Amended Complaint ¶ 54).  Four days later on May 21, 2018, Plaintiff initiated suit by filing the original Complaint in this matter.

## II.  <u>Questions Presented</u>

      **A. WHETHER COUNT I OF THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR ANTICIPATORY BREACH OF CONTRACT?**

      **B. WHETHER COUNT II OF THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR DENIAL OF SUBSTANTIVE DUE PROCESS UNDER 42 U.S.C. §1983?**

**C. WHETHER COUNT III OF THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM AGAINST DEFENDANTS FOR CONSPIRACY?**

**D. WHETHER, IN ANY EVENT, COUNTS II AND III MUST BE DISMISSED ON THE BASIS THAT DEFENDANTS ARE IMMUNE FROM SUIT?**

**E. WHETHER COUNT IV OF THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT RELIEF IN THAT, ON THE FACE OF THE DOCUMENTS, DEFENDANT TOWNSHIP IS AUTHORIZED TO TERMINATE THE LEASE WITH PLAINTIFF?**

## III.   <u>Argument</u>

A motion to dismiss pursuant to Fed. R.C.P. 12(b)(6) may be granted where, accepting all well-pleaded facts in the complaint as true, the plaintiff is not entitled to relief.  <u>Cowell v. Palmer Township</u>, 263 F.3d 286 (3d Cir. 2001).  In ruling on a motion to dismiss, the Court should disregard rote recitals of the elements of a cause of action, legal conclusions and mere conclusory statements.  <u>Allen v. DeBello, et al.</u>, 861 F.3d 433 (3d Cir. 2017).  As the United States Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact).

8

Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007)(citation and footnote omitted)(emphasis added); see also, Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise the right to relief above the speculative level).

Further, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that "…a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

The Iqbal Court went on to specifically highlight the two principles which underpinned its decision in Twombly. First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678-79; see also, Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific analysis, drawing on the court's judicial experience and common sense. Iqbal, 556 U.S. at 679; Fowler, 578 F.3d at 211. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but has not shown – that the complainant is entitled to relief.  Id.

This means that a court's inquiry is normally broken into three parts:  "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Where, as here, on the face of the complaint, plaintiff fails to allege facts sufficient to state a claim for relief, the complaint should be dismissed.

A. **Count I of the Amended Complaint should be dismissed because it fails to state a claim for anticipatory breach of contract.**

Count I of the Amended Complaint alleges that the following events represent "a definite and unconditional repudiation" of the Lease, as well as an "absolute and unequivocal refusal" by Defendant Township to perform under the Lease, thereby constituting an anticipatory breach of the Lease:  the May 18, 2017 vote to eliminate the billboard and the subsequent termination notice sent to Plaintiff; the September 21, 2017 vote denying Plaintiff's request to reconsider and rescind the decision to terminate the Lease; the January 18, 2018 vote to clarify Defendant Township's termination of the Lease; the January 25, 2018 and April 6, 2018 letters from Defendant Township; and Defendant Township's refusal to accept

rent payments from Plaintiff.  Plaintiff's allegations, however, are legally insufficient to establish a claim for anticipatory breach of contract under Pennsylvania law.

Under Pennsylvania law, a claim for anticipatory breach of contract requires an "absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so".  Harrison v. Cabot Oil & Gas Corp, 110 A.3d 178, 184 (Pa. 2015), (*quoting,* 2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila., 489 A.2d 733, 737 (Pa.1985)).  While Plaintiff has recited the "magic words", claiming that Defendant Township's actions constitute a "definite and unconditional repudiation" of the Lease and an "absolute and unequivocal  refusal to perform", the facts alleged simply do not support Plaintiff's conclusory characterizations.

The filing of a legal action – much less the mere statement of an intention to file such a legal action – contesting the validity or meaning of a contract does not amount to an unequivocal refusal to perform sufficient to state a claim for an anticipatory breach.  Harrison, 110 A.3d at 186.  Nor does the mere disagreement regarding the interpretation of a contract or the parties' respective rights and obligations thereunder constitute an anticipatory breach.  See, Andrews v. Cross Atlantic Capital Partners, Inc., 158 A.3d 123 (Pa.Super. 2017) (en banc) (statement by one party that it would not make certain payments because the agreement did not obligate it to do so did not constitute an "absolute and unequivocal refusal to perform", but instead merely reflected a disagreement between the parties as to the

interpretation of the agreement.)  In other words, there is a difference between repudiating an acknowledged contractual obligation by unequivocally refusing to perform it, and simply disagreeing regarding the nature and extent of the contractual obligation in the first place.  The former would give rise to a claim for anticipatory breach, while the latter would not.

Here, Defendant Township's decision to terminate the Lease, its notifications to Plaintiff to remove the billboard and its alleged refusal to accept rent from Plaintiff following the termination establish nothing more than a dispute between the parties regarding the nature and extent of their respective rights and obligations under the Lease Agreement.  While Defendant Township's interpretation of its rights and obligations under the Lease and Addendum is clearly at odds with Plaintiff's, such a disagreement does not constitute an anticipatory breach.  Andrews, supra.

Additionally, Defendant Township's January 25, 2018 and April 6, 2018 correspondence likewise do not establish facts supporting a claim for anticipatory breach of contract.  As an initial matter, it is the letters themselves – not Plaintiff's characterization of them – that control.  Moreover, what is clear from the letters themselves is that Defendant Township is asserting that it properly exercised its right to terminate the month-to-month lease arrangement ***pursuant to its authority to do so under the terms of the Lease and Addendum*** and that, if Plaintiff refuses to remove the billboard as requested, it will ***take whatever legal***

12

***action*** is necessary to accomplish such removal.  On its face, this is not an "unequivocal refusal to perform" under the contract; rather, it is an assertion that Defendant Township ***has properly performed and intends to enforce its rights under the contract.***

Moreover, even if the Court were to accept Plaintiff's characterization of Defendant Township's correspondence as a "promise" to remove and dispose of the billboard, it is still insufficient to establish an "absolute and unequivocal refusal to perform."  Plaintiff itself acknowledges that the January 25, 2018 and April 6, 2018 letters were not the last word on the subject.  Rather, the May 17, 2018 motion passed by Defendant Township's Board of Commissioners was the last word. That motion clearly authorized *the filing of legal action* to remove the billboard, not the unilateral removal of the billboard without legal authority.  (Amended Complaint ¶ 54).  At a minimum, this renders any previous alleged threat to unilaterally remove the billboard equivocal.  See, Theobald v. R.H. Kuhn Company, Inc., 2017 WL 1041394 (Pa.Super. March 17, 2017) (unreported) (noting that the email relied upon to establish anticipatory breach was not the "last word" on the subject and subsequent communications rendered it equivocal).  Again, Defendant Township's stated intent to pursue legal action is legally insufficient to state a claim for anticipatory breach.  Harris, supra.

In short, Defendant Township's alleged actions do not reflect a *repudiation* of the contract, but instead reflect *an assertion of its rights* under the contract.

13

Accordingly, Count I of Plaintiff's Amended Complaint must be dismissed for failure to state a claim for anticipatory breach of contract.

## B. Count II of the Amended Complaint should be dismissed because it fails to state a claim for a denial of substantive due process rights.

Count II of the Amended Complaint alleges that certain Individual Defendants "acted in bad faith and violated the law" by purportedly secretly texting each other during a public meeting and otherwise privately discussing and attempting to influence respective voting positions regarding the Lease, thereby violating the Pennsylvania Sunshine Act, 65 Pa.C.S. §§ 701, et seq., which requires the Board of Commissioners to conduct its deliberations and take official action on Township business openly and publicly.  As a result of this purported "bad faith and illegal conduct", Plaintiff alleges that Defendants infringed upon Plaintiff's "protected property interest" and deprived Plaintiff of substantive due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution.  (Amended Complaint, ¶¶ 76-80).  As established below, however, Plaintiff's allegations are legally insufficient to state a claim for any denial of substantive due process rights.

The Fourteenth Amendment[2] prohibits a state from "depriv[ing] any person

---

[2] Although Plaintiff also invokes the Fifth Amendment to the U.S. Constitution in its substantive due process claim, the Fifth Amendment does not provide a basis for this claim.  Rather, the Fifth Amendment, made applicable to state and local governments through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.  Plaintiff's original Complaint included a Fifth Amendment "takings" claim, but the Amended Complaint – filed in

14

of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, §1. In order to state a substantive due process claim, a plaintiff must first establish the existence of a property interest protected by the Fourteenth Amendment which was aggrieved by government action.   Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).   However, even if this threshold requirement is established, government action does not violate substantive due process when merely the result of "improper motive."   Rather, the standard for determining whether a substantive due process violation has occurred is whether there is governmental action that rises to the level of "shocking the conscience."   United Artists Theatre Circuit v. Township of Warrington, 316 F.3d 392, 400 (3d Cir. 2003);  see also, Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998) ("Official conduct is sufficiently outrageous only when it shocks the conscience).   The U.S. Supreme Court has repeatedly emphasized that "only the most egregious official conduct" qualifies as conduct violating substantive due process rights.   Cnty. of Sacramento, 523 U.S. at 846.

In the present case, Plaintiff has failed to allege facts sufficient to establish either a constitutionally protected property interest, or conduct on the part of Defendants capable of supporting a substantive due process claim.   As an initial matter, Plaintiff makes no attempt whatsoever to define any constitutionally protected property interest at stake, instead merely asserting in cursory fashion that Defendants' actions infringed upon some unspecified, undefined "protected

---

response to Defendant Township's Motion to Dismiss – does not include a takings claim.  To the extent Plaintiff asserts any claim under the Fifth Amendment, it must therefore be dismissed for failure to allege any facts in support thereof.

property interest". (Amended Complaint, ¶ 80). This is a classic example of the type of "threadbare recital of elements of a cause of action, supported by mere conclusory statements" that are insufficient to state a claim under <u>Iqbal</u>. This alone provides a sufficient basis for dismissing Plaintiff's substantive due process claim.

Moreover, even assuming Plaintiff is relying on its interest in the Lease as the bases for its substantive due process claim, this too is legally insufficient. In order to state a substantive due process claim, "a plaintiff must have been deprived of a particular quality of property interest. Only those property interests deemed 'fundamental' are worthy of substantive due process protection under the Constitution." <u>Chester County Aviation Holdings, Inc. v. Chester County Aviation Authority, et al.</u>, 967 F.Supp.2d 1098, 1107-1108 (E.D. Pa. 2013) (citing <u>Acierno v. Cloutier</u>, 40 F.3d 597 (3d Cir. 1994) and <u>Indep. Enter., Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103 F.3d 1165, 1179 (3d Cir. 1997)). An interest provided by contract with a state entity might give rise to a property right protected by the Fourteenth Amendment, but only in two very limited circumstances: (1) "where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits"; or (2) "where the contract itself includes a provision that the state entity can terminate the contract only for cause." <u>Linan-Faye Construction co. v. Housing Authority of Camden</u>, 49 F.3d 915, 932-932 (3d. Cir. 1995) (quoting <u>Unger v. Nat'l Residents Matching Program</u>, 928 F.2d 1392, 1399 (3d Cir. 1991)). An ordinary

commercial contract falls into neither of these categories.  Chester County Aviation, 967 F.Supp.2d at 1108.

In the present case, Plaintiff does not allege any facts indicative of any type of protected status and the Lease certainly provides no basis for any such implication.  Nor does the Lease limit the ability to terminate only for cause. Instead, the Lease, as amended by the Addendum, clearly and unambiguously establishes that, at all times during which Defendants allegedly took action infringing on Plaintiff's purported property rights, the only property right at stake was a month-to-month tenancy which, by its very nature, is terminable by either party simply upon providing proper notice.  This is true irrespective of *who* had the right to terminate the Lease because the *nature* of the property interest – *i.e.,* a month-to-month tenancy – was the same at all times relevant to the substantive due process claim.

To the extent that Plaintiff attempts to argue that the May 7, 2018 agreement wherein Kay Builders agreed not to exercise any termination rights in the Lease until 2023 somehow changes this result, this argument necessarily fails. The agreement with Kay Builders did not even come into being until well after Defendants had already taken all of the actions complained of with respect to the substantive due process claim.  Thus, whatever the effect of the subsequent agreement with Kay Builders, it does not change the fact that the only property interest at stake at the time of Defendants' actions was a month-to-month lease which was terminable merely upon proper notice.

Clearly, the Lease at issue in this case constitutes nothing more than an ordinary commercial contract which does not rise to the level of a fundamental property interest protected by the Fourteenth Amendment.  The mere breach of a contract by a governmental entity simply does not give rise to a constitutional claim.  Chester County Aviation, 967 F.2d at 1109 (citing numerous authorities).  Accordingly, Plaintiff has failed to meet even the threshold requirement of establishing a fundamental property right and, therefore, its substantive due process claim fails at the outset.  See, Professional Police Services, Inc. v. Housing Authority of the City of Charlotte, N.C., 2016 WL 828630 (W.D.N.C. Feb. 2, 2016) (no fundamental property interest in month-to-month contract; alleged breaches of contracts do not give rise to substantive due process claims); and Comav, LLC v. So. California Logistics Airport Authority, 2017 WL 6017354 (C.D.Cal. March, 2, 2017) (no constitutionally protected property interest in mere expectation of renewal of month-to-month lease).

Moreover, even if Plaintiff could establish that it has been deprived of a property interest protected by the Fourteenth Amendment, it has nevertheless failed to allege facts sufficient to establish that Defendants engaged in conduct that "shocks the conscience."  The sole basis for Plaintiff's substantive due process claim is that two of the Individual Defendants – Ronald W. Beitler and Ronald R. Beitler – exchanged private text messages during the September 21, 2017 public meeting, and that other Individual Defendants "upon information and belief" communicated in secret on additional occasions regarding the decision to terminate the Lease.

According, to Plaintiff this conduct was in bad faith and violative of the Pennsylvania Sunshine Act[3].  However, even assuming all of these allegations to be true for the sake of argument, they do not provide an adequate legal basis for a substantive due process claim.

The Third Circuit has long recognized that improper, or even illegal, conduct in and of itself does not meet the "shocks the conscience" standard required to establish a substantive due process claim.   In <u>United Artists</u>, <u>supra</u>, the Third Circuit specifically overruled prior precedent which established a less stringent "improper motive" test in the context of land-use cases and confirmed that the "shocks the conscience" standard applies in all substantive due process cases.  316 F.3d at 400.  In doing so, the Court cited with approval language from <u>Chesterfield Development Corp. v. City of Chesterfield</u>, wherein the Eighth Circuit Court of Appeals stated that even conduct in violation of an ordinance was insufficient to establish a substantive due process claim because "[a] bad-faith violation of state law remains only a violation of state law."  <u>United Artists</u>, 316 F.3d at 402 (quoting, <u>Chesterfield </u>Development, 963 F.2d 1102, 1104-05 (8th Cir. 1992)).

The Third Circuit has subsequently restated its approval of the principle set forth in the <u>Chesterfield Development</u> case on several occasions.  <u>See</u>, <u>Highway Materials, Inc. v. Whitemarsh Twp.</u>, 386 Fed.Appx. 251, 257 (3d Cir. 2010) ("A bad-faith violation of state law remains only a violation of state law") (quoting

---

[3] Plaintiff has not brought a cause of action for violation of the Pennsylvania Sunshine Act and any such cause of action would be barred by the 30 day statute of limitations.  <u>Gaus v. Pocono Mt. Reg. Police Comm.</u>, 2017 WL 5070227, *7 (M.D.Pa. Nov. 3, 2017).

Chesterfield Development, 963 F.2d at 1105)); and Lindquist v. Buckingham Twp.,
106 Fed.Appx. 768, 774 (3d Cir. 2004) ("a state-law error, no matter how
fundamental, cannot in and of itself create a federal due process violation") (quoting
Chesterfield Development, 963 F.2d at 1105)).   Additionally, in the Highway
Materials case, the Court also cited with approval Fourth Circuit precedent holding
that the "fact that state courts are available to redress and correct violations of
state law belies the existence of a substantive due process claim."  386 Fed.Appx. at
257 (quoting, Tri-County Paving Inc. v. Ashe County, 281 F.3d 430, 441 (4th Cir.
2002)).

       More recently, this Honorable Court has reiterated the principle that "no
federal due process violation exists based on a mere violation of state law".  Guiliani
v. Springfield Township, 238 F.Supp.3d 670, 700 (E.D.Pa. 2017) (citing Chesterfield
Development, Highway Materials, Lindquist, supra, and Baker v. Coxe, 230 F.3d
470, 474 (1st Cir. 2000) ("[E]ven an arbitrary denial of [a building] permit in
violation of state law – even in bad faith – does not rise above the constitutional
threshold for…substantive due process claims.")).   Additionally, Judge O'Neill in
Guiliani, summarized the type of conduct that might qualify as "conscience-
shocking" under Third Circuit precedent, "including evidence of self-dealing or
corruption, the hampering of development in order to interfere with otherwise
constitutionally-protected activity, municipal action reflecting bias against an
ethnic group, or evidence indicating a "virtual taking" of the claimant's property."
238 F.Supp. 3d at 696 (citing Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d

Cir. 2004) (internal quotation marks omitted)).

In the present case, Plaintiff does not even purport to allege any improper motive on the part of the Defendants, much less any conduct rising to the level of "conscience-shocking". Instead, Plaintiff's substantive due process rests *solely* on the alleged violation of state law – *i.e.,* the Pennsylvania Sunshine Act – resulting from the purported private communications by and among the Individual Defendants in relation to the decision to terminate the Lease. Even accepting Plaintiff's assertions as true in their entirety, however, they simply fail as a matter of law to establish a substantive due process claim. If Plaintiff had a claim under the Pennsylvania Sunshine Act, which it does not, it was free to pursue any remedies available under that statute. However, Plaintiff's attempt to – quite literally – make a federal case out of an alleged violation of a state law must be rejected.

Based on the above arguments, Plaintiff has failed to plead facts sufficient to state a claim for the denial of substantive due process and, therefore, Count II of the Amended Complaint must be dismissed.

### C. Count III of the Amended Complaint should be dismissed because it fails to state a claim for conspiracy.

Count III of the Amended Complaint purports to state a claim against the Individual Defendants for conspiracy based on allegations that they combined or agreed to: (1) violate the Pennsylvania Sunshine Act; (2) deny Plaintiff's substantive

due process rights; and (3) effectuate the anticipatory breach of the Lease.  Again, Plaintiff's claim fails as a matter of law for numerous reasons.

As an initial matter, although Plaintiff couches its claim in terms of a conspiracy to commit acts that are unlawful under the laws of the Commonwealth of Pennsylvania, at least a portion of its claim is based on allegations that Defendants conspired to deny Plaintiff substantive due process under the U.S. Constitution.  (Amended Complaint, ¶ 83(b)).  As set forth in detail above, Plaintiff has failed to state a claim for any violation of federal substantive due process rights and, therefore, Plaintiff's claim for any civil conspiracy based upon substantive due process likewise fails as a matter of law.  Moreover, even if this were not the case, a federal claim for conspiracy to violate due process rights is governed by 42 U.S.C. § 1985(3) and Plaintiff has utterly failed to allege facts sufficient to state a claim under this provision.

To state a claim under Section 1985(3), a plaintiff must plead and prove:  (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  Panayotides v. Rabenold, 35 F. Supp. 2d 411, 420 (E.D. Pa. 1999)(citing United Brotherhood of Carpenters & Joinders of America, Local 610, AFL-CIO  v. Scott, 463 U.S. 825, 829, 103 S. Ct. 3352, 3356

(1983)).  In order to satisfy the second element of the claim, a plaintiff must plead

that the defendants were motivated by "some racial, or perhaps otherwise class-

based, invidiously discriminatory animus...."  Id. (quoting Perlberger v. Perlberger,

1997 WL 597955, at *3 (E.D. Pa. Sept. 16,1997)).  The element of racial or class-

based animus is an essential element to a §1985 conspiracy claim.  Giuliani, 238

F.Supp.2d at 708, (citing Robison v. Canterbury Village, Inc., 848 F.2d 424, 430 (3d.

Cir. 1988) and Pratt v. Thornburgh, 807 F.2d 355, 357 (3d Cir. 1986)).

Here, Plaintiff has failed to make any allegations of racial or class-based

animus and, therefore, has failed to state a federal claim for conspiracy to deny

substantive due process rights.  Guiliani, 238 F.Supp.3d at 708.

Moreover, Plaintiff's conspiracy claim – whether based on federal or state law

– also fails as a matter of law under the intra-corporate conspiracy doctrine, which

provides that:

> It is basic in the law of conspiracy that you must have two persons or entities
> to have a conspiracy. A corporation cannot conspire with itself any more than
> a private individual can, and it is the general rule that the acts of an agent
> are the acts of the corporation.

Scott v. Township of Bristol, 1990 WL 178556, at *6 (E.D. Pa. Nov. 14, 1990)

(quoting Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir.

1952));  see also, Lackner v. Glosser, 892 A.2d 21,35 (Pa.Super. 2006)(agents of a

single entity cannot conspire among themselves) (citing Grose v. Procter and

Gamble Paper Products, 866 A.2d 437,441 (Pa.Super. 2005), appeal denied, 585 Pa.

697 (2005)).  Further, the Third Circuit extended the intra-corporate conspiracy

doctrine to civil rights cases.  See Robison, 848 F.2d at 430-31.

Accordingly, a claim of conspiracy among two or more agents of a single

entity does not state a cause of action for either a federal based civil conspiracy

claim or a state law based civil conspiracy claim.  See Aiello v. County of

Montgomery, 2000 WL 157154, at *6 (E.D. Pa. Feb. 11, 2000); and Bougher v. Univ.

of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989); see also, Lackner and Grose, supra.

Here, Plaintiff contends that the alleged conspiracy involves all members of a

single entity, i.e., the Township.  Because the challenged conduct is the act of a

single entity, there can be no claim for conspiracy.  Accordingly, Plaintiff fails to

state a claim for conspiracy and Count III of the Amended Complaint must be

dismissed.

**D.  In any event, Counts II and III must be dismissed on the basis that Defendants are immune from suit.**

Additionally, even if this Honorable Court were to find that Plaintiff has

sufficiently pled claims for a substantive due process violation or civil conspiracy,

these claims must nevertheless be dismissed because Defendants are immune from

suit.

First, as to the claims against the Individual Defendants alleging denial of

substantive due process rights and/or federal-based conspiracy claims, said

defendants are entitled to either legislative and/or qualified immunity.  Municipal legislators, such as the Individual Defendants, enjoy absolute immunity from suit or liability under § 1983 for their legislative activities.  Hogan v. Township of Haddon, 278 Fed.Appx. 98 (3d Cir. 2008) (citing Bogan v. Scott-Harris, 118 S.Ct. 966 (1998)).  A legislator's exercise of discretion and budgetary powers, as well as the management of meetings, are entitled to legislative immunity.  Hogan, 278 Fed.Appx at 103-104 (citing Bogan, 118 S.Ct at 970, 973).

In the present case, all alleged actions by the Individual Defendants relate to the decision to terminate the Lease, which by Plaintiff's own account involved financial or budgetary considerations, and discussions among the Defendants related thereto.  (Amended Complaint ¶ 32, citing discussions regarding recommendations to terminate the Lease because it was below market value).  As such, all of the alleged activities are clearly legislative activities to which the doctrine of legislative immunity applies.

Additionally, even if legislative immunity did not apply, the Individual Defendants nevertheless are shielded from liability under the doctrine of qualified immunity.  Qualified immunity protects government officials performing discretionary functions so long as their conduct does not violate established constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A court required to rule upon the qualified immunity issue must consider, then, whether the facts, taken in the light most

favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  Id.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  Id. at 202.  Courts are not required to address these prongs of the qualified immunity analysis in any particular order.  Pearson v. Callahan, 555 U.S. 223, 237 (2009).

For a right to be "clearly established" for purposes of the qualified immunity analysis, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right.  Hughes v. Shestakov, 2002 WL 1742666, at *4 (E.D. Pa. July 22, 2002).  The analysis of whether a right was "clearly established" "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (quoting Saucier, 533 U.S. at 201).  Tellingly, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  Id. at 206 (citation omitted).  In order to be "clearly established", there must be existing precedent establishing the constitutional question beyond debate.  Stanton v. Sims, 134 S.Ct. 3, 4-5 (2013) (per curiam).  This has been recognized as a "high threshold" to meet.  Hinterberger v. Iroquois School Dist., 548 Fed.Appx. 50, 52 (3d Cir. 2013)

26

First, for the reasons expressed above, Plaintiff has failed to establish a constitutional violation or a federal civil conspiracy claim and as such, the Individual Defendants are entitled to qualified immunity.  Second, even if this Honorable Court believes the Plaintiff has sufficiently pled these claims, they are certainly not based on any "clearly established" rights as to prevent the Individual Defendants from being entitled to qualified immunity.

Regarding the substantive due process claim, as discussed above, given the inherently tenuous nature of a month-to-month lease, Plaintiff has not even clearly established the existence of a constitutionally protected property right that has been infringed upon.  Moreover, Plaintiff relies solely on alleged violations of state law, which the case law clearly establishes does *not* rise to the level of "conscience-shocking" activity required to establish a substantive due process claim.  <u>See</u>, <u>United Artists</u> and <u>Guiliani</u>, <u>supra</u>, (citing <u>Chesterfield Development</u>); <u>see also</u>, <u>Highway Materials</u> and <u>Lindquist</u>, <u>supra</u>.   Even if Plaintiff were to be able to point to authority providing otherwise (of which Defendants are not aware), the numerous cases noting that even a bad faith violation of a state law is insufficient to establish a substantive due process claim would nevertheless preclude a finding that the alleged constitutional right has been "clearly established".  As such, it is reasonable that the individuals presented with this issue would not be aware of any potential for a violation of Plaintiff's constitutional rights.

Likewise, there is no "clearly established" right in relation to any alleged federal civil conspiracy claim under §1985(3). Again, the case law requiring allegations of racial bias or class-based animus in order to create liability under §1985(3) precludes a finding that any "clearly established" right was violated. Accordingly, as to any federal-based claims, the Individual Defendants are entitled to qualified immunity and must be dismissed from this action with prejudice.

Additionally, the Individual Defendants are also immune from suit in relation to Plaintiff's state law civil conspiracy claim under the doctrine of "high public official" immunity. The common law doctrine of "high official immunity" insulates high-ranking public officials from liability for all conduct taken in the course and scope of their official duties. Roehrig v. Township of Cass, 2015 WL 5478354 at *5 (Pa.Cmwlth. 2015) (citing Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952)). It is an absolute and unlimited privilege which exempts a high public official from all civil suits for damages, even those arising out of purportedly malicious or willful misconduct. Roehrig, 2015 WL 5478354 at *5 (citing Osiris Enterprises v. Borough of Whitehall, 877 A.2d 560, 566-67 (Pa.Cmwlth. 2005)). Moreover, this privilege is not abrogated by the exception to official immunity for acts of malice or willful misconduct set forth in the Pennsylvania Judicial Code at 42 Pa.C.S.A. § 8550. Id.

Although frequently cited in the context of immunity to suits alleging defamation, the doctrine of high official immunity is applicable to all actions taken

in the course of official duties, not just defamatory statements.  Roehrig at *5; see also, Jonnet v. Bodick, 244 A.2d 751 (Pa. 1968).  Additionally, it is well established that township commissioners, such as the Individual Defendants in the present case, are "high public officials" entitled to this immunity.  Roehrig at *6 (citing Jonnet, 244 A.2d at 753 (noting that township supervisors exercise the entire legislative and executive powers of the municipality and there are no more important officers in a township)).

Here, Plaintiff seeks to hold Individual Defendants liable for the intentional tort of civil conspiracy.  However, under the doctrine of high public official immunity, the Individual Defendants are absolutely immune from such liability, thereby requiring the dismissal of this claim.  See, Roehrig at *6 (specifically applying the doctrine of high official immunity to dismiss civil conspiracy claim); see also, Weaver v. Franklin County, 918 A.2d 194 (Pa.Cmwlth. 2007) (noting that civil conspiracy is an intentional tort claim).

Finally, although Plaintiff does not name Defendant Township in its conspiracy claim, any attempt to do so would likewise be barred based on principles of governmental immunity.  Defendant Township, as a local agency, is immune from suit for intentional torts under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541, and the exceptions to immunity set forth in that Act are inapplicable. Weaver, 918 A.2d at 199-200.  Again, it is clear that a claim for civil conspiracy is an intentional tort claim for which Defendant Township has immunity from suit.

Weaver, 918 A.2d at 199-200 (holding local agency immune from suit from civil conspiracy claim under 42 Pa.C.S. § 8541).  Therefore, any argument that Defendant Township is potentially liable on Plaintiff's state law civil conspiracy claim likewise fails as a matter of law and must be dismissed.

**E. Count IV of the Amended Complaint fails to state a claim for declaratory judgment relief because, on the face of the documents, Defendant Township is authorized to terminate the lease arrangement with Plaintiff.**

Count IV of the Amended Complaint asserts that an actual controversy exists between the parties as to their respective rights and obligations under the Lease and Addendum and seeks a declaratory judgment that Defendant Township is not legally entitled to terminate the lease arrangement, and that the termination of same constitutes a breach or default by Defendant Township under the Lease and Addendum.

As an initial matter, although Count IV is purportedly brought against "all Defendants", Plaintiff's allegations in Count IV are limited solely to Defendant Township.  Moreover, the Individual Defendants are not parties to the Lease and, therefore, there is no "case or controversy" as between Plaintiff and the Individual Defendants in relation to the Lease.  Accordingly, Count IV must be dismissed as to the Individual Defendants on this basis alone.

Additionally, even as to Defendant Township, Plaintiff's claim for declaratory relief fails as a matter of law based on the plain language of the Lease and

Addendum.  Defendant Township, on the other hand, is entitled to judgment as a matter of law declaring that it has full authority under the Lease and Addendum to terminate the lease arrangement with Plaintiff.

Plaintiff's entire claim rests on its assertion that Paragraph 9 of the Lease governing "Assignment" requires that the original Lessor, *i.e.,* Kay Builders, maintains the sole and exclusive right to terminate the Lease, presumably in perpetuity.  Plaintiff, however, does not – and indeed cannot – allege that Defendant Township is merely the assignee (or even the heir or successor) of Kay Builders vis-à-vis the Lease.  To the contrary, Plaintiff's own allegations establish that as of June 2013, Plaintiff and Defendant Township entered into a new and separate agreement whereby they agreed that Defendant Township "is now the Lessor" and that the Lease "shall continue on a month-to-month basis".  (Exhibit B to Amended Complaint).  Thus, it is clear on the face of the documents that, whatever status Defendant Township held prior to the date of the Addendum, at all times since the Addendum was signed, Defendant Township has been the Lessor on a month-to-month lease.  Not the assignee or successor to the Lessor on a five-year lease, but ***the Lessor*** on a ***month-to-month lease***.  There can be no dispute that the Lessor on a month-to-month lease has the right to terminate the lease by providing proper notice prior to the termination date

Moreover, to the extent there is any discrepancy between the identity of the Lessor or the parties' respective termination rights as provided under the Lease

versus as provided under the Addendum, any such discrepancy is expressly resolved by the language of the Addendum.  That document provides clearly and unequivocally that "IN THE EVENT OF A CONFLICT between the Lease and this Addendum, ***the provisions of this Addendum shall take priority…***"  (Exhibit B to Amended Complaint).   Thus, the express language of the Addendum itself unequivocally resolves any perceived confusion as to who may exercise termination rights:  Defendant Township is clearly and unequivocally ***the Lessor*** on a month-to-month lease created by the Addendum, with all the attendant rights and liabilities associated therewith.

## IV. <u>Conclusion</u>

For all the reasons discussed above, Plaintiff's Amended Complaint must be dismissed in its entirety.

NORRIS, MCLAUGHLIN & MARCUS, P.A.

By:  */s/ Steven E. Hoffman*
    Steven E. Hoffman, Esquire
    Attorney I.D. # 63911
    shoffman@nmmlaw.com
    515 West Hamilton Street, Suite 502
    Allentown, PA  18101
    Ph# 610-391-1800 Fax# 610-391-1805
    *Attorneys for Defendants*

32