## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAMS OUTDOOR ADVERTISING
LIMITED PARTNERSHIP, a Minnesota
Limited Partnership,

                Plaintiff,

      vs.

LOWER MACUNGIE TOWNSHIP, et al.,

                Defendants.

Civil Action No. 5:18-cv-2124

HONORABLE HENRY S. PERKIN, J.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Adams Outdoor Advertising Limited Partnership, by and through its attorney, James L. Pfeiffer, Esq., of the law firm of Pfeiffer & Bruno, P.C., hereby submits its Response in Opposition to Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint. For all the reasons set forth in the accompanying Memorandum of Law, Plaintiff respectfully requests this Honorable Court deny Defendants' Motion and enter the attached Order.

Respectfully submitted:

**PFEIFFER & BRUNO, P.C.**

BY:   /s/ *James L. Pfeiffer, Esq.*
         JAMES L. PFEIFFER, ESQ., I.D. #47268
         Attorney for Plaintiff
         44 N. 2nd Street – P.O. Box 468
         Easton, PA 18044-0468
         610-258-4003 (o)
         610-258-1943 (f)

Dated: October 1, 2018

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP, a Minnesota Limited Partnership,<br><br>                              Plaintiff,<br><br>                    vs.<br><br>LOWER MACUNGIE TOWNSHIP, et al.,<br><br>                              Defendants. | Civil Action No. 5:18-cv-2124<br><br><br>HONORABLE HENRY S. PERKIN, J. |

### PLAINTIFF'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Adams Outdoor Advertising Limited Partnership, by and through its attorney, James L. Pfeiffer, Esq., of the law firm of Pfeiffer & Bruno, P.C., hereby submits Plaintiff's Memorandum of Law in support of its Response in Opposition to Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint, as follows:

### I.        PROCEDURAL HISTORY

Plaintiff, Adams Outdoor Advertising Limited Partnership, filed a Civil Action Complaint on May 21, 2018 against Defendant Lower Macungie Township.  The Township waived service of the summons on May 29, 2018, and thereafter filed a Motion to Dismiss the Complaint on July 23, 2018.

On August 6, 2018, Plaintiff filed an Amended Complaint (doc.11) pursuant to Rule 15(a)(1)(B) ("Amendment as a matter of course"), adding the individually-named Defendants hereto.  Plaintiff's claims sound in anticipatory breach of contract (Count I versus Defendant Lower Macungie Township), violations of civil rights under 42 U.S.C. §1983 for denial of

substantive due process (Count II versus Defendants Lower Macungie Township, Ronald W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, and Brian P. Higgins), and conspiracy under Pennsylvania law (Count III versus Defendants Ronald W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, Brian P. Higgins, and Benjamin A. Gallardo). Plaintiff additionally seeks a declaratory judgment (Count IV versus all Defendants).

On August 7, 2018, the Court denied Defendants' original Motion to Dismiss in light of the filing of the Amended Complaint.  Defendants thereafter filed the instant Motion to Dismiss Amended Complaint on September 7, 2018 (doc.16).

Plaintiff hereby files this Response in Opposition to Defendants' motion.

## II.    FACTS

Plaintiff's Complaint carefully, concisely, and fully sets forth a detailed pleading of facts and circumstances which, when viewed in the light most favorable to Plaintiff, sufficiently pleads the causes of action set forth therein.   The well-pled facts taken directly from the Complaint reveal as follows:

Plaintiff is Adams Outdoor Advertising Limited Partnership (hereinafter "Adams"), which is in the business of leasing and purchasing off-premise signs (billboards).   (Amended Compl. at ¶¶1, 12.)  Defendant Lower Macungie Township (hereinafter the "Township") is a municipality in the Commonwealth of Pennsylvania, and Defendants Ronald W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, Brian P. Higgins, and Benjamin A. Gallardo each serve or have served at the relevant times as members or officials on the Lower Macungie Township Board of Commissioners. (Id. at ¶¶2-8.)

On January 10, 2003, Adams executed a Lease Agreement with Kay Builders (hereinafter "Kay") for an existing billboard structure at 430 Main Street, Wescoville, PA 18106, located in

Lower Macungie Township, Lehigh County, Pennsylvania. (Id. at ¶13.) The term of the Lease was for five (5) years, commencing June 1, 2003, with automatic extensions of like terms. (Id. and Ex. "A".) With respect to termination rights under the January 10, 2003 Lease Agreement, Adams and Kay specifically negotiated and agreed upon contractual provisions limiting the persons or entities that could terminate the Lease Agreement to the original parties. (Id. at ¶14 and Ex. "A".) Specifically, Adams and Kay agreed as follows pursuant to paragraph eight (8) of the Lease Agreement:

> "This Lease is binding upon the heirs, successors and assigns of both Lessor and Lessee, *with the exception of any termination rights of Lessor set forth in this Lease Agreement or any addendum or subsequent amendment, which rights may only be exercised by the original Lessor (whose name is set forth at the top of this lease)* and *not by or for the benefit of any entity with the power of eminent domain*. . . ."

(Id. at  ¶15 and Ex. "A".) "The original Lessor whose name is set forth at the top of" the Lease Agreement is Kay Builders. (Id. at  ¶16 and Ex. "A".)

In 2011, Kay conveyed the land upon which the billboard/structure is situated to the Township. (Id. at ¶17.) Thereafter, on October 4, 2013, Adams executed with the Township an "Addendum to Lease Agreement Between Lower Macungie Township & Adams Outdoor Advertising" (hereinafter "Addendum") with respect to the billboard/structure. (Id. at ¶18 and Ex. "B".) The Addendum was expressly made part of the January 10, 2003 Lease between Adams and Kay, and the parties explicitly adopted all terms of the original lease with only very limited, specified exceptions. (Id. at ¶19 and Ex. "B".) The Addendum converted the term of the Lease Agreement to a month-to-month lease effective June 1, 2013 and set a monthly rent amount payable to Lower Macungie Township. (Id. at  ¶20 and Ex. "B".) *Those were the only changes: term and rent amount and payee.* (Id.) The Addendum *specifically provides that "In all other respects, the Lease remains unchanged."* (Id. at ¶21 and Ex. "B".) The Addendum

did not address the issue of termination rights and did not address the provision set forth in the Lease Agreement specifically reserving termination rights to the Lessee and the original Lessor, i.e. Kay Builders, only. (Id. at ¶22 and Ex. "B".) In other words, with respect to termination rights, which the Addendum does not address, "the Lease remains unchanged" under the terms of the Addendum negotiated between Adams and the Township. (Id. at ¶23.)

The Township, via the clear terms of the contract, had full knowledge and notice that only Adams and Kay could terminate the Lease when it negotiated the Addendum and agreed to be bound by these terms of the Lease Agreement. (Id. at ¶24.) The Addendum, and the Lease Agreement it expressly incorporates, represents a valid and legally enforceable contract into which the Township entered, agreeing to be bound by the terms thereof, <u>after</u> taking ownership of the property on which the billboard is situated. (Id. at ¶25.) The Township, as owners of the property on which the billboard is located, was free to enter into any contract it chose to in 2013 with respect to leasing the land to Adams for a billboard. (Id. at ¶26.) The Township chose to do so in the form of the Addendum to the Lease Agreement that expressly incorporated the terms of the original Lease, and so it is that contract, freely negotiated and entered into by the Township <u>after</u> it took ownership of the land, that governs the rights and responsibilities of the parties thereafter. (Id. at ¶27.) The Addendum which the Township freely negotiated and entered into with Adams, expressly grants or continues to reserve the right to terminate the billboard lease to Adams and Kay, only, as "the original Lessor whose name is set forth at the top of this lease." (Id. at ¶28.) The Township was free to negotiate and enter into a contract with other or different termination rights, but it chose not to do so, and did not do so, agreeing instead by the express language of the contract to which it agreed to be bound by the termination rights expressly set forth in the incorporated Lease Agreement. (Id. at ¶29.)

Adams and Kay have an executed Agreement in which Kay has agreed not to exercise its termination rights as the "original Lessor" under the Lease Agreement before May 7, 2023.  (Id. at ¶30 and Ex. "C".)

On May 18, 2017, the Township met to discuss the billboard lease.  At the time of the meeting, the following Defendants were Members or officials of the Board of Commissioners: Ronald W. Beitler, Ronald R. Beitler, Douglas H. Brown, Brian P. Higgins, and Benjamin A. Galiardo.  (Id. at ¶31 and Ex. "D".)  By motion of Defendant Galiardo, seconded by Defendant Ronald W. Beitler, the Township voted to approve "to eliminate the billboard on the Township's property…effective January 1, 2018."  (Id. at ¶33 and Ex. "D".)  It was further indicated that the Solicitor would draft "a termination notice to the billboard company" (Adams).  (Id.)

Commencing with the June 1, 2017 Township meeting, Defendant Galiardo was no longer on the Board of Commissioners, having resigned to relocate.  (Id. at ¶34 and Ex. "E".) The following have been the Members and/or officials of the Board of Commissioners through the filing of this action: Defendant Ronald W. Beitler, Defendant Ronald R. Beitler, Defendant Douglas H. Brown, Defendant Brian P. Higgins, and Defendant Richard V. Ward.  (Id.)  At the June 1, 2017 meeting, the Solicitor reported that "a letter of termination was sent out for Hamilton Blvd. billboard to remove the structure by 12/31/17."  (Id. at ¶35 and Ex. "E".)

On September 7, 2017, Plaintiff requested to be placed on the agenda at the next public meeting to discuss the Township's termination of the billboard lease.  (Id. at ¶36 and Ex. "F".) Plaintiff appeared at the September 21, 2017 public meeting and requested the Board reconsider its position and rescind the termination.  (Id. at ¶37 and Ex. "G".)  During the September 21, 2017 public meeting, Defendant Ronald W. Beitler, President of the Township's Board of Commissioners, was privately texting his father, Defendant Ronald R. Beitler, Member of the

Township's Board of Commissioners, concerning the matters being discussed.  (Id. at ¶38.) Defendants Ronald W. Beitler and Ronald R. Beitler texted each other on their cell phones during the meeting, keeping the conversation of the issues private between them during an open public meeting, and before voting on issues related to the Lease Addendum with Adams.  (Id. at ¶39.)  They privately discussed their respective positions and vote via text without disclosing the contents of same to the public in the open meeting.  (Id.)  A Planning Director, who was sitting next to a third Board Member, alerted that third Board Member to the fact that Defendant Ronald W. Beitler was texting his father, Defendant Ronald R. Beitler, trying to sway his father's vote via private text messaging during an open public meeting.  (Id. at ¶40.)

Upon information and belief, Defendants, individually, or collectively as a quorum, communicated in secret on additional occasions for purposes of deliberating and influencing each other's votes concerning the official action of terminating the Lease Agreement and removing Adams' billboard, thus conspiring to violate Plaintiff's substantive due process rights secured by the United States Constitution and resulting in a violation of the Pennsylvania Sunshine Law.   (Id. at ¶41.)  Following Defendants' private communications and attempt to secretly "whip" votes in the middle of the public meeting, a Motion was made to authorize Township staff to enter into negotiations with Plaintiff about the possibility of amending the lease agreement; that Motion failed with the texting Defendants Ronald W. Beitler and Ronald R. Beitler both opposing the motion along with Defendant Brown.  (Id. at ¶42 and Ex. "G".)

Defendants' conduct of privately deliberating via text message about the positions and votes of various members of the public body, during an open public meeting of the Board of Commissioners, violated Pennsylvania's Sunshine Act, 65 Pa.C.S. §§ 701-716, which requires the Board of Commissioners to conduct such deliberations and take official action on agency

business openly and publicly.  (Id. at ¶43.)  Defendants' conduct of secretly deliberating and whipping votes by communications held outside the record of the public meeting, and outside the knowledge of Plaintiff and members of the public, affected the final vote which was illegal conduct and manifestly constituted bad faith.  (Id. at ¶44.)  The resulting action of the Board of Commissioners – the denial of Plaintiff's request to reconsider and rescind Defendants' termination of the lease agreement – effectively reaffirmed Defendants' position that the lease was terminated and the billboard must be removed.  (Id. at ¶45 and Ex. "G".)

Upon information and belief, Plaintiff believes Defendants, individually or collectively as a quorum, continued their private and secret deliberations concerning terminating the Lease Agreement and removing Adams' billboard after the September 21, 2017 meeting, thus conspiring to violate Plaintiff's substantive due process rights secured by the United States Constitution and resulting in a violation of the Pennsylvania Sunshine Law.  (Id. at ¶46.)

On January 18, 2018, by motion of Defendant Ward seconded by Defendant Ronald R. Beitler, the Board of Commissioners voted "to clarify the termination of the lease for the billboard", and the motion carried.  (Id. at ¶47 and Ex. "H".)  Thereafter, on January 25, 2018, counsel for the Township sent correspondence to Adams indicating that: (a) the Township is terminating the Lease Agreement; (b) the Township will not negotiate a new lease; (c) the Township demands that the billboard/structure be permanently removed forthwith; and (d) the Township is threatening legal action if the billboard/structure is not removed.  (Id. at ¶48.)  Defendants Ronald W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, and Brian P. Higgins, members of the Township Board of Commissioners, personally authorized and agreed with the position taken in the January 25, 2018 letter on behalf of the Township.  (Id. at ¶49.)

On April 2, 2018, counsel for Adams sent correspondence to counsel for the Township rejecting the Township's demand and citing the termination rights and assignment provisions of the Lease Agreement and Addendum to which the Township agreed, and which limit the right to terminate the lease to Adams and the "original Lessor," i.e, Kay, alone.  (Id. at ¶50.)  On April 6, 2018, the Township, by letter to counsel for Adams, renewed its demand that the billboard be immediately removed, and indicated that it intends to remove and dispose of the billboard itself if Adams does not do so by Friday June 1, 2018.  (Id. at ¶51.)  Defendants Ronald W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, and Brian P. Higgins, members of the Township Board of Commissioners, personally authorized and agreed with the position taken in the April 6, 2018 letter on behalf of the Township.  (Id. at ¶52.)  The minutes from the April 19, 2018 Township meeting reflect that the Solicitor reported "a letter was mailed to Adams Outdoor Advertising to remove the billboard on Hamilton by June 1st."  (Id. at ¶53 and Ex. "I".)

On May 17, 2018, the Township, by vote of its Board of Commissioners (the individually-named Defendants herein), approved a motion to authorize counsel for the Township to file legal action to remove the billboard should Adams not do so by June 1, 2018.  (Id. at ¶54.)  Defendants Ronald W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, and Brian P. Higgins each personally authorized, agreed with, and voted to approve the May 17, 2018 motion to have counsel for the Township act to remove the billboard.  (Id. at ¶55.)

Adams has not breached and remains in full compliance with all aspects of the Lease Agreement and the Addendum, including continuing to pay its monthly rent to the Township.  (Id. at ¶56.)  Meanwhile, the Township has admittedly refused to accept Adams' payments in accordance with the Lease Agreement and Addendum.  (Id. at ¶57.)  Adams has no intention of terminating the Lease Agreement and accordingly, absent the Township's anticipated breach,

and the conspiracy of all named Defendants, the Lease Agreement will remain in effect until at least May 7, 2023 under the Agreement with Kay not to terminate before that date.  (Id. at ¶58.)

The revenue for the double-sided static billboard at its current location and size is between $20,000.00 and $30,000.00 per year.  (Id. at ¶59.)  As a result of the Township's breach and the conspiracy of all named Defendants, Adams will suffer injury and financial loss including but not limited to lost profits in excess of $100,000.00, or the minimum value of the lease over the next five years until May 7, 2023 (the earliest possible termination date).  (Id. at ¶60.)

## III.   STANDARD OF REVIEW

The well-recognized standards governing review of a motion filed under Rule 12(b)(6), when applied to Defendants' instant motion, lead to the inescapable conclusion that it is without merit and should be denied.

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth the well-recognized pleading standard that a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  A short and plain statement of the claim does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569-570 (2007). Moreover, plausibility is an extremely lenient standard, requiring nothing more than the "short and plain statement" posited by Rule 8(a)(2) so as to simply give the defendant fair notice of what the claim is and the grounds underlying it.  Erickson v. Pardus, 551 U.S. 89, 93 (2007)(citing Twombly, 550 U.S. 555).  It does not depend on any showing of probable or likely success; to the contrary, a claim may proceed even if actual proof is "improbable" and ultimate recovery "unlikely."  Twombly, 550 U.S. at 556; see also Ashcroft v. Iqbal, 129 S.Ct. 1937,

11

1949 (2009), and <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 213 (3d Cir. 2009).  In the posture of a motion to dismiss, courts must focus on what is pleaded, not on what can be proved. <u>Fowler</u>, 578 F.3d at 213 (district court should not conduct an "evidentiary inquiry" at the motion-to-dismiss stage.)  Additionally, plaintiffs may rely on discovery to reveal evidence after simply giving the defendant short and plain notice of a claim.  <u>Twombly</u>, 550 U.S. at 556, 570 (rejecting a "heightened fact pleading").

Quite significantly, defendants bear the ultimate burden of showing that no claim has been stated when submitting a 12(b)(6) motion to dismiss.  <u>See</u> <u>e.g.</u> <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

Moreover, in the posture of a motion to dismiss, all of the plaintiff's factual allegations "are assumed to be true."  <u>Fowler</u>, 578 F.3d at 211; <u>see also</u> <u>Alexander v. Whitman</u>, 114 F.3d 1392, 1397 (3d Cir. 1997).  Not only that, but the Court must also draw all reasonable inferences in the plaintiff's favor after construing the allegations in the light most favorable to the plaintiff. <u>See</u> <u>Alexander</u>, 114 F.3d at 1397; <u>see</u> <u>e.g.</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The plausibility standard does not undermine this well-established principle of drawing all reasonable inferences in the plaintiff's favor.  <u>Phillips</u>, 515 F.3d at 231; <u>Revell v. Port Auth.</u>, 598 F.3d 128, 134 (3d Cir. 2010); <u>see</u> <u>also</u> <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 262 n.27 (3d Cir. 2010).  A case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations.  <u>EEOC v. Southwestern Baptist Theological Seminary</u>, 651 F.2d 277, 283 (5th Cir. 1981).

Plaintiff's Amended Complaint amply satisfies the minimal burdens of Rule 8 pleading by giving Defendants clear notice of each and every claim presented.  Moreover, the Complaint

goes well beyond those minimal requirements. Far from being formed of "naked assertions devoid of factual enhancement," the Amended Complaint contains extensive facts, a substantially-developed timeline, and the details of Defendants' tortious and unconstitutional conduct resulting in a breach of contract.

Defendants' fail to meet their burden on their 12(b)(6) motion. Accordingly, it should be denied.

## IV.   DISCUSSION

**A.    Plaintiff's Amended Complaint properly states a claim for anticipatory breach of contract as Defendant definitively and unequivocally voted to terminate the Lease Agreement and Addendum, the express terms of which prohibit Defendant from exercising termination rights.**

Pennsylvania law holds as follows:

> "An anticipatory breach of a contract occurs whenever there has been a definite and unconditional repudiation of a contract by one party communicated to another. A statement by a party that he will not or cannot perform in accordance with agreement creates such a breach."

Jonnet Development Corporation, 463 A.2d 1026, 1031 (Pa. Super. 1983)(quoting Wolgin v. Atlas United Financial Corp., 397 F.Supp. 1003, 1014 (E.D. Pa 1975)(finding that the stoppage of payments by defendant and its communication to plaintiffs that no further compensation would be forthcoming was an anticipatory breach), *aff'd*, 530 F.2d 966 (3d Cir. 1976). Given this clear admonition concerning what constitutes an anticipatory breach of contract, little need be said in response to Defendants' 12(b)(6) motion beyond the direct, plain and abundant evidence of Defendants' definite and unconditional repudiation of the Lease Agreement and Addendum as contained in the Amended Complaint:

- On May 18, 2017, Defendant, through its Board of Commissioners, voted "to eliminate the billboard on the Township's property…effective January 1, 2018" and to send "a termination notice to the billboard company," i.e., to Plaintiff. (Amended Compl. at ¶33 and Ex. D.)

13

- On June 1, 2017, Defendant confirmed at the public meeting that "a letter of termination was sent out for Hamilton Blvd. billboard to remove the structure by 12/31/17." (Amended Compl. at ¶35 and Ex. E.)

- On September 21, 2017, at a meeting where Plaintiff requested Defendant reconsider its position and rescind the termination, Defendant refused to rescind the termination. (Amended Compl. at ¶¶37, 42, 45 and Ex. G.)

- On January 18, 2018, Defendant, by its Board of Commissioners, voted to once again reaffirm the termination of the Lease Agreement and Addendum for the billboard. (Amended Compl. at ¶47 and Ex. H.)

- On January 25, 2018, Defendant indicated by letter that the Township was terminating the Lease Agreement and demanding that the billboard/structure be permanently removed forthwith. (Amended Compl. at ¶48.)

- On April 6, 2018, Defendant renewed its demand that the billboard be immediately removed and indicated that it intended to remove and dispose of the billboard itself if Plaintiff did not do so. (Amended Compl. at ¶51.)

These actions and statements by Defendants, collectively, including both official votes and unequivocal statements terminating the Lease Agreement and Addendum, most definitively constitute "a statement by a party that it will not perform in accordance with an agreement." See Jonnet Development Corporation, 463 A.2d at 1031. The official votes of Defendants along with their actions to communicate their intent, viewed in the light most favorable to Plaintiff as required, constitute "definite and unconditional repudiation of a contract by one party communicated to another." Id. Indeed, this is the most obvious and plain reading of Defendants' actions and intent: they wanted to end the Lease Agreement and Addendum and took very definitive and unequivocal steps to accomplish it. See Edwards v. Wyatt, 335 F.3d 261, 272 (3d Cir. 2003); see McClelland v. New Amsterdam Casualty Co., 185 A. 198, 200 (Pa. 1936)(establishing that an "absolute and unequivocal refusal to perform" or "a distinct and

positive statement of an inability to do so" constitute anticipatory breach of contract under Pennsylvania law).

Defendants' citation to <u>Harrison</u>, which held that the filing of a legal action contesting the validity or meaning of a contract does not amount to an unequivocal refusal to perform, is plainly distinguishable.  Defendants did not file a legal action.  Nor did they seek declaratory judgment. Defendants did not threaten or intimate legal process when they repeatedly voted to terminate the contract, placed their repudiation of it on the public record, and communicated that termination with a demand that Plaintiff remove its billboard.  The minutes of their discussions and votes from May 18, 2017, June 1, 2017, September 21, 2017, and January 18, 2018 make no mention of legal process, but rather only state the decision of Defendants to terminate the contract.  (See Amended Compl. at Exhibits D, E, G, and H.)  Nor do any of their discussions or official decisions indicate they were merely "disagreeing" with an interpretation of a contract.[1]  No such discussions or questioning of contractual rights appears on the record.  Rather, at each of their meetings, Defendants acted decisively to declare the Lease Agreement and Addendum officially ended.  Indeed, Defendants stopped accepting the monthly rent payments from Plaintiff, further reinforcing their decision.  (Id. at ¶57.)  There can be no more absolute and unequivocal repudiation of a contract than a party voting to terminate it, voting to reaffirm that termination, and repeatedly communicating that termination with a demand that the other party likewise cease performing under the contract.

---

[1] Defendant's suggestion in Section A of its Brief that its actions reflect only an equivocating disagreement of interpretation, and an intent to seek judicial interpretation of the contract, is diametrically opposed to their argument in Section E of the Brief.  In Section E, Defendants claim declaratory judgment is inappropriate and adamantly argue that there is no other interpretation of the contract that is possible except their own.  In voting to terminate the contract and order the billboard's removal without mention of legal process, Defendants expressed the same unequivocal resolve in the righteousness of their unilateral interpretation that they express in Section E,  thus undermining their argument in Section A.

Defendant's unequivocal termination of the contract resulted in an anticipatory breach as Defendant does not have the power to terminate the contract under an express provision to which they negotiated and agreed.  The Lease Agreement was originally created on January 10, 2003 between Plaintiff and Kay for an existing billboard structure located in Lower Macungie Township, Lehigh County, Pennsylvania.   (Amended Compl. at ¶13.)   With respect to termination rights under the Lease Agreement, Plaintiff and Kay specifically negotiated and agreed upon contractual provisions limiting the persons or entities that could terminate the Lease Agreement to the original parties.  (Id. at ¶14 and Ex. "A").   Specifically, Plaintiff and Kay agreed as follows, pursuant to paragraph eight (8) of the Lease Agreement:

> "This Lease is binding upon the heirs, successors and assigns of both Lessor and Lessee, **with the exception of any termination rights of Lessor set forth in this Lease Agreement or any addendum or subsequent amendment, which rights may only be exercised by the original Lessor (whose name is set forth at the top of this lease)** and **not by or for the benefit of any entity with the power of eminent domain**. . . ."

(Id. at ¶15 and Ex. "A" (emphasis added).)   "The original Lessor whose name is set forth at the top of" the Lease Agreement is Kay Builders.  (Id. at  ¶16 and Ex. "A".)

In 2011, Kay conveyed the land upon which the billboard/structure is situated to the Township.  (Amended Compl. at ¶17.)   Thereafter, on October 4, 2013, Plaintiff executed with Defendant an "Addendum to Lease Agreement Between Lower Macungie Township & Adams Outdoor Advertising" (hereinafter "Addendum") with respect to the billboard/structure.  (Id. at ¶18 and Ex. "B".)   The Addendum was expressly made part of the January 10, 2003 Lease between Adams and Kay, and the parties explicitly adopted all terms of the original lease with only very limited, specified exceptions.  (Id. at ¶19 and Ex. "B".)  The Addendum converted the term of the Lease Agreement to a month-to-month lease effective June 1, 2013 and set a monthly rent amount payable to Lower Macungie Township.  (Id. at ¶20 and Ex. "B".)   ***Those were the***

16

*only changes: term and rent amount and payee.*  (Id.)  The Addendum ***specifically provides that "In all other respects, the Lease remains unchanged."***  (Id. at ¶21 and Ex. "B".)  The Addendum did not address the issue of termination rights and did not address the provision set forth in the Lease Agreement specifically reserving termination rights to the Lessee and the original Lessor, i.e. Kay Builders, only.  (Id. at ¶22 and Ex. "B".)  In other words, with respect to termination rights, which the Addendum does not address, "the Lease remains unchanged" under the terms of the Addendum negotiated between Adams and the Township.  (Id. at ¶23.)

The Township had full knowledge and notice that only Adams and Kay could terminate the Lease when it negotiated the Addendum and agreed to be bound by these terms of the Lease Agreement.  (Amended Compl. at ¶24.)  The Addendum, and the Lease Agreement it expressly incorporates, represents a valid and legally enforceable contract into which the Township entered, agreeing to be bound by the terms thereof, <u>after</u> taking ownership of the property on which the billboard is situated.  (Id. at ¶25.)  The Township, as owners of the property on which the billboard is located, was free to enter into any contract it chose to in 2013 with respect to leasing the land to Adams for a billboard.  (Id. at ¶26.)  The Township chose to do so in the form of the Addendum to the Lease Agreement that expressly incorporated the terms of the original Lease, and so it is that contract, freely negotiated and entered into by the Township <u>after</u> it took ownership of the land, that governs the rights and responsibilities of the parties thereafter.  (Id. at ¶27.)  The Addendum which the Township freely negotiated and entered into with Adams, expressly grants or continues to reserve the right to terminate the billboard lease to Adams and Kay, only, as "the original Lessor whose name is set forth at the top of this lease."  (Id. at ¶28.)  The Township was free to negotiate and enter into a contract with other or different termination rights, but it chose not to do so, and did not do so, agreeing instead by the express language of

17

the contract to which it agreed to be bound by the termination rights expressly set forth in the incorporated Lease Agreement.  (Id. at  ¶29.)

Adams and Kay have an executed Agreement in which Kay has agreed not to exercise its termination rights as the "original Lessor" under the Lease Agreement before May 7, 2023.  (Id. at ¶30 and Ex. "C".)   By virtue of the express reservation of termination rights to which Defendant agreed, Defendant is thus without power or authority to terminate the lease.   Its definite and unconditional repudiation of the Lease Agreement, in the form of official votes to terminate it and demand for the removal of the billboard/structure, constitute an anticipatory breach of contract under well-established Pennsylvania law.  Accordingly, Plaintiff has stated a claim in Count I for anticipatory breach of contract and Defendants' motion must be denied.

**B.     The Amended Complaint establishes Plaintiff's Fourteenth Amendment substantive due process claims for deprivation of protected property and liberty interests.**

The illegality and misconduct of Defendants in secretly conducting deliberations and whipping votes on their cell phones in violation of the Pennsylvania Sunshine Act, in bad faith and with intent to harm Plaintiff, are sufficiently "shocking" allegations to state a substantive due process claim at the pleading stage.

In order to state a claim under §1983, Plaintiff's Amended Complaint must allege: (1) conduct committed by a person acting under color of state law, and (2) that said conduct deprived Plaintiff of rights, privileges or immunities secured by the Constitution or the law of the United States.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Leer Electric, Inc. v. Pennsylvania Dept. of Labor and Industry, 597 F.Supp.2d 470, 478 (M.D. Pa. 2009)(citing Parratt v. Taylor, 451 U.S. 527, 535 (1981).  Defendants do not, and could not, dispute that the Amended Complaint alleges conduct committed by a municipality and its individual Commissioners under color of state law.   (See Amended Compl. at ¶¶73-81.)

18

Accordingly, the question before the court is whether Plaintiff's Amended Complaint, at the pleading stage, sufficiently alleges that Defendants' conduct deprived Plaintiff of a right or privilege secured by the Constitution. See Kaucher, 455 F.3d at 423.

The Due Process Clause of the Fourteenth Amendment "contains a substantive component that bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them." MFS, Inc. v. DiLazaro, 771 F.Supp.2d 382 (E.D. Pa. 2011)(citing Zinermon v. Burch, 494 U.S. 113 (1990)). Deprivation of substantive due process rights under the Fourteenth Amendment to the United States Constitution may take one of two forms: (1) the deprivation of a property interest, or (2) the deprivation of a liberty interest. Leer Electric Inc., 597 F.Supp.2d at 479. Count II of Plaintiff's Amended Complaint implicates both, and accordingly Plaintiff here addresses the sufficiently of the pleading as to both types of interests, property and liberty, seriatim.

1.  Plaintiff's protected property interest

In order to allege a substantive due process deprivation of property interest under §1983, a plaintiff must allege as a threshold matter that it has a protected property interest to which the Fourteenth Amendment's due process protection applies. American Marine Rail NJ, LLC v. City of Bayonne, 289 F.Supp.2d 569, 581 (D. NJ. 2003); Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 427 (3d Cir. 2003). That is, the particular property interest must be one that is "worthy of" substantive due process protection. Nicolette v. Caruso, 315 F.Supp.2d 710 (W.D. Pa. 2013)(citing DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592 (3d Cir. 1995) and United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 592 (3d Cir 2003)).

The Supreme Court has not defined the full spectrum of property interests protected under the substantive component of the Due Process Clause. Holt Cargo Systems, Inc. v.

Delaware River Port Authority, 20 F.Supp. 2d 803, 829 (E.D. Pa. 1998).   However, it is abundantly clear that "[o]wnership is a property interest worthy of substantive due process protection."  Id. at 830 (quoting Independent Enter., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997); see also DeBlasio, 53 F.3d at 600.  **Likewise, the Third Circuit has held that:**

> *"A lease is a property interest worthy of substantive due process protection."*

Holt Cargo Systems, Inc., 20 F.Supp. 2d at 830 (citing DeBlasio, 53 F.3d 592 at 600-601 n.10 and Neiderhiser v. Borough of Berwick, 840 F.2d 213, 217-18 (3d Cir. 1988)).  In Neiderhiser, the Third Circuit held that *a lessor's allegation* that an exemption from a municipal zoning ordinance had been arbitrarily and irrationally denied *stated a valid substantive due process claim*.  See 840 F.2d 213. Following the Third Circuit's determination that a lease is worthy of substantive due process protection, the United States District Court for the Eastern District of Pennsylvania also recognized that a lessee may have a substantive due process claim.  See American Fabricare v. Township of Falls, 101 F.Supp.2d 301, 309-10 (E.D. Pa. 2000).

Moreover, "the use and enjoyment of a subject property are rights that are inherent to ownership, ***and by implication, to a leasehold,***" and accordingly, not only is the lease itself a protected property interest, but ***the lessee's planned use of a leasehold also qualifies as a protected property interest under substantive due process***.  American Marine Rail, NJ, LLC v. City of Bayonne, 289 F.Supp.2d 569, 582-84 (D. NJ. 2003).  The cases collecting the general jurisprudence in this area thus make it abundantly clear that a lessee has a property interest in its lease worthy of constitutional protection.  See e.g., Id. and Nicolette, 315 F.Supp.2d at 722.

Defendants' reliance upon <u>Chester County Aviation Holdings, Inc. v. Chester County Aviation Authority</u> is unavailing.[2]   There, the Court noted that the lease specifically provided that *the defendant may cancel the lease* for reasons other than cause.  967 F.Supp.2d 1098, 1108 (E.D. Pa. 2013).   However, the plaintiff there did not plead that the defendant terminated its lease, constructively or otherwise.  <u>Id.</u>  Accordingly, the Court distinguished its case from the holding of <u>Holt Cargo Systems</u> that "a lease is a property interest worthy of substantive due process protection," by stating that ***"[w]here a plaintiff's leasehold interests have not been interrupted or terminated,*** "the property interests of which plaintiffs have in fact been deprived or interfered with must involve something less substantial" and therefore do not warrant protection under the Due Process Clause.  <u>Id.</u>  ***Here, the Amended Complaint clearly alleges Defendant's termination or interruption of Plaintiff's leasehold interest***, <u>and</u> as thoroughly discussed in the previous section, Defendant did not have <u>*any*</u> right to terminate the Lease Agreement and Addendum, for cause or otherwise.   These critical distinctions lead to the inescapable conclusion that Defendant cannot circumvent the general rule that ***"a lease is a property interest worthy of substantive due process protection."*** <u>Holt Cargo Systems, Inc.</u>, 20 F.Supp. 2d at 830 (<u>citing</u> <u>DeBlasio</u>, 53 F.3d 592 at 600-601 n.10 and <u>Neiderhiser v. Borough of Berwick</u>, 840 F.2d 213, 217-18 (3d Cir.)).

Here, the property interest at issue is both a physical billboard structure owned by Plaintiff as well as a Lease Agreement and Addendum executed by the parties.   (Amended Compl. at ¶¶13-30, 74, 80 and Exhibits "A" and "B".)   Under the precedents of this Court and

---

[2] Aside from <u>Chester County Aviation</u>, Defendants cite only a district court case from North Carolina and one from California, neither of which is even persuasive given the clear pronouncement in the Third Circuit that in this jurisdiction a lease is a property interest protected by substantive due process under the Fourteenth Amendment.  <u>Holt Cargo Systems, Inc.</u>, 20 F.Supp. 2d at 830 (<u>citing</u> <u>DeBlasio</u>, 53 F.3d 592 at 600-601 n.10 and <u>Neiderhiser v. Borough of Berwick</u>, 840 F.2d 213, 217-18 (3d Cir.)).

the United States Court of Appeals for the Third Circuit, these property interests have already been deemed "worthy of" substantive due process protection.

Plaintiff's protected property interest established, the second part of a substantive due process claim requires Plaintiff to allege conduct that was arbitrary or egregious to the degree of shocking the conscience.  UA Theatre Circuit, 316 F.3d at 399-401; MFS, Inc., 771 F.Supp.2d at 438-39.  The meaning of this standard varies depending on the factual context, Id., and "conduct that shocks in one environment may not be so patently egregious in another," County of Sacramento v. Lewis, 523 U.S. 833, 847, 850 (1998).  Indeed, it has been said that whether a given action shocks the conscience has an "elusive" quality to it, making it difficult to identify. MFS, Inc., 771 F.Supp.2d at 441 (citing Estate of Smith v. Marasco, 318 F.3d 497, 509 (3d Cir. 2008)).  Such elusiveness alone is enough to caution against the viability of Defendants' motion to dismiss at this early stage of the proceedings.

Plaintiff has pled unlawful and bad faith conduct in blatant violation of the Pennsylvania Sunshine Act when Defendants privately texted and secretly deliberated in an attempt to influence votes to deny Plaintiff its protected property interest.  Where a plaintiff alleges that government actions deprived it of substantive due process rights through actions that were *fraudulent, dishonest, unlawful, malicious or conducted in bad faith*, this is "precisely the type of 'conscience-shocking' behavior identified by the Supreme Court in *County of Sacramento v. Lewis*."  Leer Electric, Inc., 597 F.Supp.2d at 479-80 (denying motion to dismiss where pleading sufficiently raised a reasonable expectation that discovery would show such conduct); See also Associates of Obstetrics & Gynecology v. Upper Merion Township, 270 F.Supp. 633, 656 (E.D. Pa. 2003)(plaintiff stated a claim meeting conscience-shocking standard by alleging zoning regulations were enforced with intent to harm him and restrict his business interests as a lessee);

Ryan v. Lower Merion Twp., 205 F.Supp.2d 434 (E.D. Pa. 2002)(finding that actions of township officials in arbitrarily delaying decision and ultimately denying permit application could satisfy the shocks the conscience standard); Nicolette, 315 F.Supp.2d at 723 (denying motion to dismiss where plaintiff's complaint alleged township officials engaged in conduct intended to harm him and designed to restrict plaintiff from developing the property he leased). Additionally, where plaintiff alleged that the conduct depriving it of substantive due process also violated the Commerce Clause, a fact finder could determine that the violation of another constitutional provision satisfies the conscience shocking standard for a substantive due process violation.  American Marine Rail NJ, LLC., 289 F.Supp.2d at 584-85.  In other words, where the denial of substantive due process is alleged to have resulted from unlawful conduct, same sufficiently "shocks the conscience."

Plaintiff has pled exactly that: conduct of an illegal nature, conducted in bad faith, so as to deprive Plaintiff of its protected property interest.   With respect to their deliberations, decision-making, voting and action to terminate the Lease Agreement and Addendum and force the removal of Plaintiff's billboard (Amended Compl. at ¶¶37-49), Defendants both acted in bad faith and violated the law, (Amended Compl. at ¶74).  Defendants secretly texted each other on their cell phones during a meeting required by law to be held publicly on-the-record, and privately discussed their respective positions and votes via text messaging without disclosing the contents of same to the public in the open meeting.  (Id. at ¶¶37-49, 75.)  Moreover, they continued communicating in secret on additional occasions for purposes of deliberating and influencing each other's votes concerning the official action of terminating the Lease Agreement and removing Plaintiff's billboard.    (Id. at ¶¶37-49, 76.)   Following Defendants' private communications and attempt to secretly "whip" votes outside the record and away from public

scrutiny, Defendants voted to deny Plaintiff's request that they reconsider and rescind the termination of the contract.  (Id. at ¶¶37-49, 77.)  Defendants' conduct of privately and secretly deliberating via text message about the positions and votes of various members of the public body, both during an open public meeting of the Board of Commissioners as well as thereafter, violated Pennsylvania's Sunshine Act, 65 Pa.C.S. §§ 701-716, which requires the Board of Commissioners to conduct such deliberations and take official action on Township business openly and publicly.  (Id. at ¶¶37-49, 78.)  As a result of Defendants' bad faith and illegal conduct, Defendants, under color of state law, infringed upon Plaintiff's protected property interest and deprived Plaintiff of substantive due process guaranteed by the Fourteenth Amendments to the United States Constitution and the Constitution.  (Id. at ¶¶80-81.)

Therefore, just as in the cases cited above in which the District Courts of the Third Circuit found the behavior pled was sufficiently conscience-shocking, Plaintiff has pled illegality including secret illegal deliberations and vote tampering in violation of the law.  Such illegality, dishonesty and bad faith are "precisely the type of 'conscience-shocking' behavior identified by the Supreme Court in *County of Sacramento v. Lewis.*"  Leer Electric, Inc., 597 F.Supp.2d at 479-80.  The reason same is sufficient is obvious: if blatant illegality by township officials is insufficient to "shock the conscience", it would be a very sad commentary on the state of our collective "conscience" as a society.  Defendants here violated the law in order to harm Plaintiff's well-recognized protected property interest.  Accordingly, Plaintiff has stated a claim under Count II for a substantive due process violation and Defendants' motion must be denied.

To the extent Defendants repeatedly cite dicta from an Eighth Circuit Court of Appeals case, Chesterfield Development Corp. v. City of Chesterfield, to suggest that illegality can never "shock the conscience", it holds no sway in light of the cases of Leer Electric, Inc., Associates of

Obstetrics & Gynecology, Ryan, Nicolette, and American Marine Rail NJ, LLC. discussed above.  See United Artists, 316 F.3d at 402 (calling the Eighth Circuit's statement that a violation of state law remains only a violation of state law "dicta"); Highway Materials, Inc. v. Whitemarsh Twp., 386 Fed.Appx. 251, 257 (3d Cir. 2010)(simply requoting the dicta in its own dicta).

Moreover, the Eighth Circuit's Chesterfield case has simply been cited *in land-use cases* concerned with the prevention of turning federal courts into super-zoning boards.   In the context of land-use cases, the "shocks the conscience" test is regularly applied "to avoid converting federal courts into super zoning tribunals" because such zoning matters are of local concern only. See Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004); United Artists Theatre Circuit, Inc., 316 F.3d at 402. Thus, in Lindquist v. Buckingham Township, another land-use case Defendants cite, the Court reviewed a series of substantive due process rulings in land dispute cases such as Chesterfield and concluded that these cases stand for the principle that a violation of state zoning laws "will not support a substantive due process claim *in a land-use dispute.*"   106 Fed. Appx. 768, 774 (3d Cir. 2004).   Discussing Chesterfield, the Court summarized that case as concluding that "the enforcement of an invalid zoning ordinance was not a 'truly irrational' governmental action giving rise to a substantive due process claim."  Id. Likewise, the Township's actions in Highway Materials, Inc. in allegedly misapplying zoning ordinances were deemed "no more egregious than those of the defendants in these other land dispute cases," and insufficient to raise it above "a normal zoning dispute."  386 Fed.Appx. at 257-58.  Finally, the case of Giuliani v. Springfield Township simply reemphasized the same, and Defendants' reliance upon it is misplaced.   The Giuliani Court observed that following Eichenlaub, "courts have remained hesitant to find conscience shocking behavior *in the land-use*

*context* absent some showing that the conduct was permeated with either self-dealing or corruption." 238 F.Supp.3d 670, 696 (emphasis added).  In Guiliani, the plaintiff alleged run-of-the-mill land use disputes such as unannounced or unnecessary property inspections, delayed review of applications, requiring compliance with land development regulations, threats of legal action, and premature ruling on an application prior to the expiration of an agreed-upon extension.  Id. at 698.  The plaintiff challenged defendants' attempted enforcement of an allegedly unreasonable interpretation of the Municipal Planning Code and Subdivision and Land Development Ordinance.  Id. at 700.  "To allow such alleged behavior to rise to the level of a substantive due process violation would improperly cast the federal court in the role of a zoning board of appeals", and thus the Court was unwilling to elevate such a zoning dispute to a valid substantive due process claim.  Id. at 698, 700.

The subject matter of this case does not concern a land-use or zoning matter; nor does the illegality and bad faith conduct here alleged concern the misapplication of zoning ordinances or land use regulations as in the cases Defendants cite.  The concern of the Third Circuit Court of Appeals in preventing federal courts from becoming super-zoning boards interpreting and enforcing land-use ordinances is not implicated in this case.  Defendants' cases are simply not on point, and fail to overcome the precedential authority of those cited by Plaintiff above from the District Courts of the Third Circuit which permit a plaintiff to state a substantive due process claim supported by allegations of unlawful, dishonest and bad faith conduct (i.e., Leer Electric, Inc., Associates of Obstetrics & Gynecology, Ryan, Nicolette, and American Marine Rail NJ, LLC.).  Accordingly, Defendants' motion must be denied.

2.  Plaintiff's protected liberty interest.

With respect to the second type of substantive due process interest protected by the Fourteenth Amendment, the deprivation of Plaintiff's liberty interest, the Amended Complaint equally suffices to state a claim.  ***A corporation has a recognized, protected <u>liberty interest under the Fourteenth Amendment</u> to operate its business in the same way a person has a liberty interest to pursue a chosen profession free from unreasonable governmental interference.***  MFS, Inc. v. DiLazaro, 771 F.Supp.2d 382, 441 (E.D. Pa. 2011)(finding that plaintiff corporation had a liberty interest recognized under the Fourteenth Amendment as worthy of protection from unreasonable government interference).  A business possesses a protected liberty interest, for example, in the ability to secure future contracts free from government deprivation by acts that are fraudulent, dishonest, malicious or performed in bad faith.  See Leer Electric, Inc., 597 F.Supp.2d at 479.  As with the deprivation of a property interest, a plaintiff must plead that the deprivation of its protected liberty interest resulted from actions that shock the conscience.  Id.; MFS, Inc., 771 F.Supp.2d at 441.

In MFS, Inc., this Court held that requiring MFS, "as a polluter", to comply with governing state and federal laws and regulations in a regulated industry did not "shock the conscience" as the state actors "were operating within their lawful authority as delegated to them by state and federal law" in requiring compliance with environmental regulations.  771 F.Supp.2d at 441, 444.  The Court stated that the defendants, responsible for regulating a company with potential to cause harm to the environment and public if certain procedures and standards were not followed, were simply doing their job in holding plaintiff to those laws.  Id. By contrast, Defendants here can claim no such honor: they were not seeking to hold Plaintiff to the law, but rather were acting in direct derogation of it when they illegally accomplished their

27

intent of harming Plaintiff through their own violations of the law.  Defendants were not "doing their job" or "operating within their lawful authority" when they conducted off-record, secret vote-tampering and deliberations on their private cell phones and electronic devices.  It is Plaintiff that seeks to hold *Defendants* accountable to the law, not the other way around.  As a business with a liberty interest that has been recognized by the United States District Court for the Eastern District of Pennsylvania, Plaintiff was entitled to pursue its business interests free from unreasonable government interference including Defendants' illegal, dishonest and bad faith misconduct.  See MFS, Inc., 771 F.Supp.2d at 441.  Accordingly, the Amended Complaint also sets forth a substantive due process claim for deprivation of Plaintiff's liberty interest in Count II (Amended Compl. at ¶¶37-49, 73-81), and Defendants' motion must be denied.

C.    **Count III of the Amended Complaint properly sets forth the factual and legal basis for the claim of conspiracy under Pennsylvania law.**

Plaintiff has properly pled conspiracy under state law where the facts and circumstances, in the light most favorable to Plaintiff, reveal a concerted effort among the individual Defendants to violate the Pennsylvania Sunshine Act and Plaintiff's substantive due process rights through illegal, bad faith conduct.

Conspiracy "occurs when two or more persons combine or agree intending to commit an unlawful act or do an otherwise lawful act by unlawful means."  Brown v. Blaine, 833 A.2d 1166, 1173, n.16 (Pa. Cmwlth. 2003).   To state a claim for conspiracy, a plaintiff must allege:

(1) A combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose;

(2) An overt act done to further the common purpose; and

(3) Actual legal damage.

Id.; see also McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (2000).

28

The Amended Complaint alleges and factually supports each of the required elements. As extensively discussed above, during the September 21, 2017 public meeting, Defendants Ronald W. Beitler and Ronald R. Beitler texted each other on their cell phones before voting on issues related to the Lease Addendum with Plaintiff, and privately discussed their respective positions and vote via text message without disclosing the contents of same to the public in the open meeting.   (Amended Compl. at ¶39.)    Additionally, Defendants, individually, or collectively as a quorum, continued their private and secret deliberations after the September 17, 2017 meeting.  (Id. at ¶46.)  They communicated in secret on additional occasions for purposes of deliberating and influencing each other's votes concerning the official action of terminating the Lease Agreement and removing Plaintiff's billboard.  (Id. at ¶41.)  Following Defendants' private communications and attempt to secretly "whip" votes, a Motion to authorize Township staff to enter into negotiations with Plaintiff about the possibility of amending the lease agreement failed.  (Id. at ¶42; See Exhibit "G".)

Defendants' conduct, as discussed in the previous section above, violated Pennsylvania's Sunshine Act, 65 Pa.C.S. §§ 701-716.  (Amended Compl. at ¶¶43-45.)

Based on these facts clearly set forth in the Amended Complaint, Plaintiff pled in Count III that:

> "Defendants Ronald W. Beitler, Ronald R. Beitler, Richard V. Ward, Douglas H. Brown, Brian P. Higgins, and Benjamin A. Galiardo combined or agreed, through multiple official votes and letters, to do unlawful acts, or to do otherwise lawful acts by unlawful means, including:
>
> a.  Deliberating and taking official action in secret via private text messaging, emails, and/or other forms of communication, including discussing and whipping votes to terminate the Contract with Adams, in violation of the Pennsylvania Sunshine Act;
>
> b.  Deliberating and taking official action in secret via private text messaging, emails, and/or other forms of communication, including

discussing and tampering with votes to terminate the Contract with Adams, in bad faith so as to deny Plaintiff substantive due process under the Fourth and Fourteenth Amendments to the United States Constitution and the Constitution of the Commonwealth of Pennsylvania;

c.  Effectuating the anticipatory breach of a valid, legally-enforceable Contract in the form of the Lease and Addendum to Lease Agreement between the Township and Adams."

(Amended Compl. at ¶83.)  These allegations, supported by ample factual detail, are clearly sufficient to allege that the individual defendants combined "with a common purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose", and took acts to further the common purpose causing actual damage to Plaintiff.  Plaintiff has identified the actors, set forth the laws they violated, and detailed how they violated those laws through concerted actions, all to the harm of Plaintiff, namely, wrongfully terminating a valid contract with the Plaintiff resulting in the deprivation of Plaintiff's property interest with commensurate damages (see Amended Compl. at ¶¶58-60 detailing damages).

Furthermore, Defendants' argument that the "intra-corporate conspiracy doctrine" bars Plaintiff's conspiracy claim is without merit where the individual defendants to this count are only sued in their personal capacities.  The boundaries of the intra-corporate conspiracy doctrine have been clearly defined, and limited, by the courts.  Where, as here, there is no entity named as a defendant to the conspiracy count, nor any official capacity claims, the individual defendants in their personal capacities cannot rely on this doctrine to shield themselves from their conspiratorial agreement.

A municipality and its officials are considered a single entity that cannot conspire with itself.  Doherty v. Haverford Township, 513 F.Supp.2d 399, 409 (E.D. Pa. 2007)(citing Robison v. Canterbury Village, Inc., 848 F.2d 424, 431 (3d Cir. 1988); Aardvark Childcare & Learning

Center, Inc. v. Township of Concord, 401 F.Supp.2d 427, 450 (E.D. Pa. 2005)).  However, under the intra-corporate conspiracy doctrine, a conspiracy between a municipality and one of its employees may indeed be maintained to the extent that liability is asserted against the employee in his individual, rather than his official, capacity.  See Scott v. Township of Bristol, Civ. A. No. 90-1412, 1990 U.S. Dist. LEXIS 15313, 1990 WL 178556 at *6 (E.D. Pa. Nov. 14, 1990).  Thus, even if Lower Macungie Township was named as a conspirator in Count III, *which it is not*, Plaintiff could maintain a cause of action against the Township and its individual employees sued in their personal (not official) capacities.  It follows then that where Plaintiff's conspiracy claim is solely against individuals sued in their personal capacities, and not against any entity or official capacity agents, its conspiracy claim is NOT barred by the intra-corporate conspiracy doctrine.  See Tomino v. City of Bethlehem, 2010 U.S. Dist. LEXIS 32221 at *42-43 (E.D. Pa. Mar. 31, 2010)(conspiracy claim may be viable under the intra-corporate conspiracy doctrine where facts support a conclusion that the municipality conspired with a municipal employee acting in his ***individual capacity***)(emphasis added); See also Cvetko v. Derry Township Police Department, 2010 U.S. Dist. LEXIS 130437 at *34 (M.D. Pa. Sept. 16, 2010)(conspiracy between a municipal entity and its agents can only be maintained to the extent that liability is asserted against the agents in their individual capacities).

As Defendants are only sued in their individual capacities, and as the Amended Complaint supports all elements of the conspiracy claim, Defendants' motion to dismiss Count III should be denied.

**D.      Defendants are not entitled to any of the myriad immunities they assert.**

On a motion to dismiss, Defendants attempt to assert a variety of immunities, none of which they are entitled, and all of which fail to overcome the standard of review applicable at this procedural stage.

1.   Defendants are not entitled to legislative immunity.

Defendants are not entitled to legislative immunity for clearly executive and administrative actions.  The United States Supreme Court has held that legislative immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'"  Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998).  The Third Circuit Court of Appeals has expressed the test for determining what constitutes "legislative activity" as follows:

> "First, the act must be substantively legislative, i.e., legislative in character. Legislative acts are those which involve policy-making decision [sic.] of a general scope or, to put it another way, legislation involves line-drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration.  In addition, the act must be procedurally legislative, that is, passed by means of established legislative procedures.  This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve."

Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 774 (3d Cir. 2000); Ryan v. Burlington County, N.J., 889 F.2d 1286, 1290-91 (3d Cir. 1989).

Accordingly, not all activities engaged in by local governmental bodies are "legislative." Donivan v. Dallastown Borough, 835 F.2d 486, 488 (3d Cir. 1987).  "It is generally understood that local governmental bodies…are given a combination of proprietary, managerial and legislative powers.  It is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing bodies are entitled to absolute immunity."

Ryan, 889 F.2d at 1290.  Put another way, local government officials are not entitled to legislative immunity when they are not legislating but rather performing managerial, executive or proprietary functions.  See Id. at 1290-91 (as an example New Jersey law requires that legislative action can only be accomplished through passage of an ordinance and where Freeholders could not point to any ordinance or resolution to justify their actions as legislative, they were not entitled to immunity); Bogan, 523 U.S. at 47 (acts of voting for and signing into law an ordinance is quintessentially legislative).

Under Pennsylvania law, the legislative powers of Defendants as members of the Lower Macungie Township Board of Commissioners are set forth in 53 P.S. §56502, including the manner in which ordinances and resolutions are to be adopted.[3]  Under the First Class Township Code, legislative powers must be exercised by the adoption of "ordinances" enacted in compliance with specified procedures.  Abraham v. Pekarski, 728 F.2d 167, 174-75 (3d Cir. 1984).  The ordinance procedure requires publication not less than seven days prior to passage of the full text of the proposed ordinance or its title and a brief summary prepared by the solicitor. 53 P.S. §56502.  Additionally, no ordinance or resolution of a legislative character in the nature of an ordinance shall be considered in force until same is recorded in the ordinance book of the township.  Id.  "Since municipal corporations have been delegated legislative authority only within defined statutory limits, they can only act legislatively when following the statutory procedures specified for such action."  Abraham, 728 F.2d 167 at 174.  ***The fact that the action complained of resulted from a vote of the members of the governing body is not dispositive, for in the exercise of non-legislative powers all corporate bodies require a vote of their governing***

_____

[3] It cannot be disputed that Lower Macungie Township operates under the First Class Township Code, as this is a matter of public record.  See e.g., http://www.lowermac.com/about-lower-macungie-township/ ; http://www.lowermac.com/about-lower-macungie-township/history/ ; https://www.ecode360.com/attachment/LO1244/LO1244-AO.pdf

***bodies.""*** Id.  Accordingly, in Pennsylvania, the passage of an ordinance is necessary to cloak the members of a local government body with the protection of legislative immunity.  See Id.; See also Donivan, 835 F.2d at 488 (holding "legislative powers require enactment of an ordinance; if an act is accomplished by means other than an ordinance, it is not an exercise of legislative activity").

Here, Defendants did not engage is legislative activity when they conspired to violate the Pennsylvania Sunshine Act and Plaintiff's substantive due process rights by engaging in illegal, secret deliberations and vote-influencing.  Nor was their action of terminating the Lease Agreement and Addendum "legislative activity."  Though they voted, they did not pass an ordinance.  Nor did they proceed by resolution.  They did not follow the required procedures to legislate as set forth in the First Class Township Code.  There is no evidence that they published their action of terminating the contract, nor recorded it in the book of ordinances.  They certainly did not publish or record their private, off-record deliberations in violation of the law that forms the crux of Plaintiff's conspiracy claim.  Thus, Defendants clearly fail the prong of the legislative action test established by the Third Circuit that requires their actions to be procedurally legislative, that is, passed by means of established legislative procedures, in order to avail themselves of legislative immunity.

Moreover, they fail the substantive prong as well since their actions in conspiring to violate the Pennsylvania Sunshine Act and Plaintiff's substantive due process rights, as well as in terminating the Lease Agreement and Addendum, were not "policy-making decisions of a general scope."  Defendants never purported to take said actions to effectuate general policy applicable to the general public.  Rather, their decision "affects a small number or a single individual," and "the act takes on the nature of administration."  Accordingly, Defendants cannot

meet the Third Circuit's requirements for the application of legislative immunity.  See Gallas, 211 F.3d at 774-75 (finding in part that judicial order was substantively legislative where it was a policy-making decision of general scope rather than a decision affecting a small number of people); Bogan, 523 U.S. at 47 (elimination of a position as a whole, unlike the hiring or firing of a particular employee, was a traditional legislative function); Leipziger v. Township of Falls, Civ. A. 00-1147, 2001 WL 111611 at *7 (E.D. Pa. Feb. 1, 2001)(act of removing an automotive collision center from the township's approved towing list is not legislative in nature as it was not a policy-making decision of general scope).  Defendants' actions, both the conspiracy and its fruit, i.e., the termination of Plaintiff's lease with Defendants, was clearly administrative at best, and in reality, illegal.

Defendants hold the burden of proving that they are entitled to legislative immunity. Christie v. Borough of Folcroft, Civ. A. 04-5944, 2005 WL 2396762 at *4 (E.D. Pa. Sep. 27, 2005).  Not only are they not entitled to it as a matter of law, as demonstrated above, but at this procedural stage they clearly cannot meet their burden of proof where Plaintiff's allegations are presumed true and viewed in the light most favorable to Plaintiff.  Id. at *5 (denying motion to dismiss based on legislative immunity where record was too sparse to support the immunity at this stage).  Thus, their motion should be denied.

2.   Defendants are not entitled to high official immunity.

Pennsylvania recognizes a doctrine of absolute immunity for high public officials.  Judge v. Shikellamy School District, 135 F.Supp. 284, 301 (M.D. Pa. 2015).  As an initial matter, Defendants may not use a state immunity such as this to insulate themselves from the application of federal law under §1983.  Howelett v. Rose, 496 U.S. 356 (1990); Martinez v. State of California, 444 U.S. 277, 284 n.8 (1980)("conduct by persons acting under color of state law

which is wrongful under 42 U.S.C. §1983 or §1985(3) cannot be immunized by state law.").  Nor may Defendants utilize the immunity against contractual claims.  <u>Judge</u>, 135 F.Supp. at 302 (observing inability to find a single case in which a Pennsylvania court has extended the immunity to include either contract or constitutional claims and declining to recognize such an extension).  Accordingly, Defendants are not shielded by the state common-law privilege of high official immunity from suit on Plaintiff's constitutional and contract claims.

To the extent Defendants raises high official immunity as a defense to Count III (conspiracy), it is equally without merit.  High public officials are only entitled to absolute immunity when acting in their official capacities.  <u>Graham v. Avella Area School District</u>, Civ. A. 02:05-cv-1344, 2006 WL 1669881 at *5 (W.D. Pa. Jun. 14, 2006).  High public officials are not immune from suit in their personal capacities, such as the one here brought by Plaintiff, where "Plaintiff's factual allegations as a whole, which the Court must accept as true at this stage of the proceedings, include Defendants' conduct occurring outside the scope of [their employment]."  <u>Zurchin v. Ambridge Area School District</u>, 300 F.Supp.3d 681, 695 (W.D. Pa. 2018)(granting motion to dismiss based on immunity as to official capacity claim but <u>*not*</u> personal capacity claim).  Notably, Plaintiff has not sued Defendants in their official capacities, but rather only in their individual/personal capacities.

High official immunity only applies to insulate from liability those high officials who act within the scope of their employment.  "Given the great potential for harm, the privilege must be limited to those statements and actions which are in fact 'closely related' to the performance of those official duties."  <u>McCormick v. Specter</u>, 275 A.2d 688, 689 (Pa. Super. 1971).  Therefore, before the immunity will apply, the defendants' actionable behavior must have been made in the course of their official duties ***and within the scope of their authority***.  <u>Osiris Enterprises v.</u>

Borough of Whitehall, 877 A.2d 560, 567 (Pa.Cmwlth. 2005); McErlean v. Borough of Darby, 157 F.Supp. 2d 441, 447 (question for the Court was whether the statements at issue, though made by high public officials, were made in the course of their official duties and within the scope of defendants' official authority).  Plaintiff's conspiracy claim is that Defendants engaged in a conspiracy to violate the Pennsylvania Sunshine Law and Plaintiff's federal due process rights under §1983 when, outside the public meeting and in secret, they illegally deliberated and swayed votes using their cell phones and email for purposes of depriving Plaintiff of its protected property interest in bad faith.  Thus, the question is whether said conspiracy and the overt acts taken in furtherance of it were within the scope of their employment.

Pennsylvania has adopted the Restatement (Second) of Agency definition for determining whether an employee's conduct is within the scope of employment.  See Butler v. Flo–Ron Vending Co., 383 Pa.Super. 633, 646, 557 A.2d 730 (Pa.Super.1989); Aliota v. Graham, 984 F.2d 1350, 1358 (3rd Cir.1993).  The Restatement (Second) of Agency §228 states that: "Conduct of a Servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."  Here, Defendants are legally prohibited from engaging in the very acts they are alleged to have committed in furtherance of their conspiracy.  Defendants' conduct of privately deliberating via text message and cell phones about the positions and votes of various members of the public body violated Pennsylvania's Sunshine Act, 65 Pa.C.S. §§ 701-716, which requires the Board of Commissioners to conduct such deliberations and take official action on agency business openly and publicly.  (Id. at ¶43.)  Thus, their actions are "different in kind from that authorized."  Moreover, the conspiracy is alleged to have occurred outside the authorized time and space limits of their employment; indeed, this is the very essence of the

illegality alleged: that Defendants were required by law to deliberate and vote at an open public meeting, but instead conspired to do so in secret for the purposes of influencing each other's votes to deny Plaintiff its constitutionally-protected property interest.   It was their express purpose to act outside the scope and legal requirements of their positions, off-record, in violation of the law.   For these reasons, it is evident that when these allegations, presumed true at this stage, are viewed in the light most favorable to Plaintiff, Defendants were not acting within the scope of their employment.

Defendants' citation to <u>Roehrig v. Township of Cass</u> is unavailing as in that case "the conduct alleged in the complaint, i.e., enacting the ordinance and directing the local police to the racetrack, indisputably falls within the course and scope of the Supervisors' official duties and authority."   No. 1144 C.D. 2014, 2015 WL 5478354 at *6 (Pa.Cmwlth. Aug. 18, 2015).   By contrast, here, the conduct of privately deliberating and secretly whipping votes outside the public record in direct violation of the Pennsylvania Sunshine Act is indisputably *prohibited by law* and thus by definition *<u>not</u>* within the Defendants' authority and official duties.   Defendants' official duties and authority cannot be said to extend to violating the law.   Accordingly, the conspiracy as alleged is not defeated by Defendants' meritless claim of high official immunity and their motion to dismiss must be denied.

3. <u>Defendants' assertion of qualified immunity is unripe as a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense.</u>

Defendants' assertion of qualified immunity is without merit as reasonable officials in Defendants' positions know full well that off-record deliberations through private text messaging and emails, about matters required by law to be heard and acted upon publicly, violate Pennsylvania law and deprive Plaintiff of its constitutional due process rights.

Qualified immunity only shields government actors from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The determination of whether a public official is entitled to qualified immunity involves a two step-analysis.  Reilly v. Atlantic City, 532 F.3d 216, 223 (3d Cir. 2008).  On a *summary judgment motion*, the court must make a "legal determination about the existence of a right, and whether it is clearly established, [and then must] determine whether the facts on the record are such that a jury could conclude that the clearly established right was violated."  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).  The Third Circuit has held, "we make clear that a qualified immunity determination must be made in light of the specific factual content of the case."  Thomas v. Independence Township, 463 F.3d 285, 289 (3d Cir. 2006).   And where the defendant seeks qualified immunity *at the summary judgment stage*, it is the factual content presented by the plaintiff – not the defendants – that the court must consider.  McKee v. Hart, 436 F.3d 165, 169 (3d Cir. 2006).

Here, the parties are nowhere close to summary judgment.  Defendants' erroneously proffered defense of qualified immunity fails at this stage of the proceedings because ***"a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense"*** and, by definition, Defendants' 12(b)(6) Motion to Dismiss looks only to the pleading.  Thomas, 463 F.3d at 289 ("mere absence of detailed factual allegations supporting plaintiff's claim for relief under §1983 does not warrant dismissal of the complaint or establish defendants' immunity.") At this factually unripe stage of the proceedings, Plaintiff is merely required to provide Defendants with a short and plain statement of its claims, not with the full and complete factual record the Court may later be called upon to adequately assess a claim of qualified immunity.

Because "a qualified immunity determination must be made in light of the specific factual content of the case," Thomas, 463 F.3d at 289, Defendants' argument is extremely premature where Plaintiff "has no pleading burden to anticipate or overcome a qualified immunity defense," Id.  The record simply has not been created yet.  Defendants may assert a meritless claim for qualified immunity after discovery, but at this point the standards for assessing its application cannot be met without the fully-developed record following discovery.

Moreover, even if the Court were to examine the merits pre-discovery, there is no question that under the Fourteenth Amendment property-owners have a right to substantive due process, that is, to process free from arbitrary conduct by public officials that shocks the conscience.  This right does not simply "exist," but rather is firmly embedded in the Constitution of the United States and the jurisprudence of our courts as already discussed at length above.  No reasonable officials in Defendants' positions could possibly believe that engaging in conduct in explicit violation of the law was a valid means of depriving Plaintiff of its federally-protected property interest.  No reasonable officials in Defendants' positions could possibly believe that violating the Pennsylvania Sunshine Act by conducting private deliberations on matters required to be heard, considered and acted upon publicly, for the purpose of taking away Plaintiff's property in bad faith, was constitutionally-sound due process.  The facts as alleged, presumed true and viewed in the light most favorable to Plaintiff, very clearly could permit a jury to conclude that Defendants' violated a clearly established right.  As qualified immunity is also an affirmative defense on which Defendants bear the ultimate burden of proof, Thomas, 463 F.3d at 292, Defendants cannot meet their burden under the facts pled by Plaintiff.  Accordingly, Defendants' motion must be denied.

**E.      Plaintiff's request for declaratory judgment is appropriately pled and legally cognizable.**

Count IV of the Amended Complaint sets forth a valid cause of action under Pennsylvania's Declaratory Judgment Act that is amply supported by the facts and circumstances of this case.

Any person interested under a deed, will, written contract or other writings constituting a contract may have determined any question of construction or validity arising under the instrument or contract and obtain a declaration of rights, status and other legal relations thereunder.  42 Pa.C.S. §7533.  A contract may be construed either before or after there has been a breach thereof.  42 Pa.C.S. §7534.  Declaratory judgments are "judicial searchlights, switched on in the behest of a litigant to illuminate an existing legal right, status or other relation." Clearfield Bank & Trust Co. v. Shaffer, 381 Pa.Super. 259, 262, 553 A.2d 455, 456 (1989)(quoting Doe v. Johns-Manville Corporation, 324 Pa.Super. 469, 473, 471 A.2d 1252 (1984)).  Judicial relief based on a declaratory judgment or decree may be granted whenever necessary or proper.  42 Pa.C.S. §7538.

Pursuant to Pennsylvania law, Plaintiff's request for declaratory relief is appropriate to resolve what is eminently a dispute between the parties concerning a written contract and their respective rights and responsibilities thereunder.  As discussed at length above, the contract in this matter is clear that termination rights remain with Plaintiff and Kay as the "original Lessor (whose name is set forth at the top of this lease)", _as agreed to by Defendant_ in the Addendum that reaffirmed that provision.  Defendants ask the Court to dismiss Count IV by arguing that their contrary interpretation is the correct one.  In doing so, Defendants ignore the standard of review at this procedural stage, including the fact that it is Plaintiff that is entitled to have the contract viewed in the light most favorable to it, receiving the benefit of all reasonable inferences therefrom.  In essence, Defendants are improperly asking the Court to grant declaratory relief

41

now – by adopting Defendants' erroneous interpretation of the written contract – via a motion to dismiss.  This is clearly an inappropriate approach at this stage as the parties' interpretations of the written document stand at odds, requiring denial of Defendant's motion.

### V.    CONCLUSION

For all of the reasons set forth in the above discussion, Defendants' Motion to Dismiss Amended Complaint should be denied.  Plaintiff has abundantly satisfied the liberal pleading standard of Rule 8, providing Defendants with sure and concise notice of its claims and the facts in support thereof.  Moreover, those claims are ones recognized as a matter of law and are supported by the case law cited herein.  Wherefore, Plaintiff respectfully requests this Honorable Court enter the attached Order denying Defendants' motion, with prejudice.

**PFEIFFER & BRUNO, P.C.**


BY:    /s/ *James L. Pfeiffer, Esq.*
          JAMES L. PFEIFFER, ESQ., I.D. #47268
          Attorney for Plaintiff
          44 N. 2nd Street – P.O. Box 468
          Easton, PA 18044-0468
          610-258-4003 (o)
          610-258-1943 (f)

Dated: October 1, 2018